**Michael C. BARRY**

**v.**

**Alfred BROWER and the Attorney General of the State of New Jersey.**

**Appeal of Alfred BROWER, Superintendent, Bergen County Jail, and W. Cary Edwards, Attorney General of New Jersey.**

No. 87–5777.

United States Court of Appeals,
Third Circuit.

Argued June 1, 1988.

Decided Dec. 30, 1988.

Mildred Vallerini Spiller, Deputy Atty. Gen. (argued), Div. of Crim. Justice, Appellate Section, Trenton, N.J., for appellants.

Jane E. Haburay, Asst. Deputy Public Defender (argued), Appellate Section, East Orange, N.J., for appellee Michael C. Barry.

Before SEITZ, SLOVITER and HUTCHINSON, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

### I.

■ The State of New Jersey appeals an order of the United States District Court for the District of New Jersey granting appellee Dr. Michael C. Barry's (Barry's) petition for a writ of *habeas corpus* under 28 U.S.C.A. § 2254 (West 1977). The order directs the Appellate Division of the New

Jersey Superior Court to reinstate Barry's appeal and the office of the state's public defender to represent him on that appeal.[1] The issues before us are (a) whether Barry established that he was an indigent within the express provision of 28 U.S.C.A. § 2254(d)(5), (b) whether the written finding of the state court's Appellate Division to the contrary is entitled to deference and (c) whether the district court had jurisdiction on *habeas corpus* to directly order the state court to reinstate Barry's appeal. We hold that Barry's uncontradicted financial inability to secure counsel for his appeal, after contacting all the lawyers suggested by the public defender, makes him indigent as a matter of law, despite his joint interest in the equity in his family residence. However, we also hold that a district court's power to grant a writ of *habeas corpus* under 28 U.S.C.A. § 2254 is limited on this record to directing Barry's release from custody if the state fails to correct the constitutional violation of his Sixth Amendment right to counsel on direct appeal. We will therefore modify the district court's order to so provide and as modified, affirm.

## II.

Although Barry completed his custodial sentence after he filed the petition for the writ on June 14, 1985, the district court had continuing jurisdiction over Barry's petition for a writ of *habeas corpus* under 28 U.S.C.A. § 2254 because a portion of Barry's three year probationary sentence remained open.[2] Persons whose liberty is restricted are "in custody" as that term is used in 28 U.S.C.A. § 2254. *See*

*Mabry v. Johnson*, 467 U.S. 504, 507 n. 3, 104 S.Ct. 2543, 2546 n. 3, 81 L.Ed.2d 437 (1984) (prisoner on parole remains "in custody" for purposes of 28 U.S.C.A. § 2254); *Jones v. Cunningham*, 371 U.S. 236, 243, 83 S.Ct. 373, 377, 9 L.Ed.2d 285 (1963) (prisoner on parole is "in custody" for purposes of § 2241); *see also Evitts v. Lucey*, 469 U.S. 387, 391 n. 4, 105 S.Ct. 830, 833 n. 4, 83 L.Ed.2d 821 (1985) (collateral consequences of conviction prevent case from becoming moot after prisoner released from custody); *Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir.1984) ("custody" includes persons released on parole and bail). We can see no material difference between probation and parole in applying the "in custody" requirement of § 2254. Moreover, the district court had jurisdiction under § 2254 when Barry filed his petition on the day he began his custodial term. *United States v. Hopkins*, 517 F.2d 420, 423 n. 6 (3d Cir.1975). That jurisdiction continues at least until the expiration of Barry's probationary term.[3]

We have appellate jurisdiction under 28 U.S.C.A. § 1291 (West Supp.1988) over the district court's order granting Barry's petition for a writ of *habeas corpus*. Our review on the question of whether Barry was denied his constitutional right to counsel on appeal is plenary. We also exercise plenary review over the meaning of the statutory terms in § 2254(d).

## III.

On May 24, 1982, after a twelve week trial, a New Jersey jury found Barry and several co-defendants guilty of multiple

---

1. This case was previously before us on Barry's appeal from the district court's first order denying the writ for failure to exhaust state remedies as required by 28 U.S.C.A. §§ 2254(b) and (c). On appeal, we held that Barry had exhausted his state remedies within the meaning of these subsections and remanded for consideration of the merits. *Barry v. Brower*, No. 85–5413 (3d Cir. September 11, 1985) [774 F.2d 1150 (table)] (per curiam) (*Barry I*).

2. On December 18, 1987, the Appellate Division of the Superior Court of New Jersey stayed the running of Barry's sentence pending the outcome of this appeal. Joint Appendix (Jt.App.) at 192. Although sentence was imposed on August 26, 1982, it did not commence until June 14,

1985 when Barry began serving his concurrent 180 day custodial sentence. Jt.App. at 150. Accordingly, the probationary sentence would have expired on June 14, 1988 but for the Appellate Division's stay.

3. Since Barry's three year probationary term has not expired, we do not consider the question of whether there are other "collateral consequences" of his conviction if it remains undisturbed, what they are, and how they affect the "in custody" requirement of 28 U.S.C.A. § 2254(d). Barry indicates that he has lost his license to practice medicine in New Jersey as a direct result of his conviction. However, the record on this point is not fully developed.

charges involving the distribution and dispensation of dangerous controlled substances. Barry's counsel quit about halfway through the trial and Barry continued as the only defendant without an attorney. On August 26, 1982, the New Jersey Superior Court sentenced Barry to concurrent three year probation terms, conditioned on his serving a 180 day custodial sentence, and also imposed an $85,000 fine.

On October 4, 1982, Barry asked the state public defender's office to represent him on appeal. That office began investigating his indigency and filed a late notice of appeal, *nunc pro tunc*, on October 25, 1982. However, on November 18, 1982, the public defender completed its investigation and found that Barry was not indigent. James K. Smith, Jr., the attorney who first concluded that Barry was not indigent and therefore ineligible for the public defender's services, stated that he did so because the investigative report showed that Barry and his wife had an $80,000 equity in their house and a money market account of about $7,500. Smith concluded that, with these assets, Barry could afford a private attorney despite the $85,000 fine. Jt.App. at 75.

On February 10, 1983, the public defender's office filed a motion for leave to withdraw as appellate counsel. Barry opposed it, claiming in his affidavit that his debts exceeded his assets, his wife opposed selling or encumbering their jointly owned residence, and that he had consulted six private attorneys recommended by the public defender and they all had refused to represent him without a substantial initial cash

outlay. *Id.* at 27–30. These facts are uncontradicted. On March 3, 1983, the Appellate Division of the New Jersey Superior Court, without discussion, granted the public defender leave to withdraw. *Id.* at 31.

Thereafter, Barry's efforts to perfect his now *pro se* appeal from the adverse verdict he received in his *pro se* trial followed what we advisedly called a three year "hapless course" in the New Jersey courts. *Barry I,* slip op. at 2–3. In the rain of motions and orders involved, the New Jersey Supreme Court shed a temporary ray of hope for Barry on December 4, 1984 when it stayed his sentence for seven days pending reconsideration by the public defender's office of his application for representation. On that reapplication, the public defender found Barry unable to obtain private counsel using the equity in his home and concluded that he qualified for representation.[4] The public defender then entered an appearance for Barry on his motion for reinstatement of his appeal. On March 8, 1985, the Appellate Division nevertheless denied Barry's motion to reinstate the appeal. In a one paragraph *per curiam* decision, it held that the public defender's initial determination of non-indigency was correct. That order reads:

> Defendant's property holdings render him ineligible for the services of the public defender. There is no authority for the proposition that the fines imposed constitute liens on defendant's real property.

*Id.* at 87.

Barry petitioned the New Jersey Supreme Court for rehearing, arguing that he

---

**4.** At the time, New Jersey law defined an "indigent defendant" as "a person who is formally charged with the commission of an indictable offense, and who does not have the present financial ability to secure competent legal representation and to provide all other necessary expenses of representation." N.J.Stat.Ann. § 2A:158A–2 (West 1985). Concerning eligibility, New Jersey law then provided, in relevant part:

> Eligibility for the services of the Office of the Public Defender shall be determined on the basis of the need of the defendant. Need shall be measured according to the financial ability of the defendant to engage and compensate competent private counsel and to provide all other necessary expenses of represen-

tation. Such ability shall be recognized to be a variable depending on the nature, extent and liquidity of assets and on the disposable net income of the defendant on the one hand, and on the nature of the charge, the effort and skill required to gather pertinent information, render advice, conduct trial or render other legal services, and probable expenses to be incurred, on the other hand.

N.J.Stat.Ann. § 2A:158A–14 (West 1985). Section 2A:158A–15 authorized the public defender's office to conduct a financial investigation to evaluate eligibility. N.J.Stat.Ann. § 2A:158A–15 (West 1985).

These statutory sections were amended in 1987. *See infra* note 8.

had been denied his Sixth Amendment right to counsel. It declined to certify the March 8, 1985 order. Barry then sought *habeas* relief in the United States District Court for the District of New Jersey under 28 U.S.C.A. § 2254. The district court initially denied the writ on exhaustion grounds and this Court reversed in *Barry I*. On remand, the district court granted Barry's petition on the merits. This appeal followed.

## IV.

A district court is empowered to entertain an application for a writ of *habeas corpus* by a person in custody under a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). Barry asserts a violation of the Constitution, claiming his Sixth Amendment right to counsel if he is "indigent." *Gideon v. Wainwright*, 372 U.S. 335, 343, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963).

■ In deciding whether to issue a writ of *habeas corpus* for a state prisoner, a district court must deal with three factors. They are: (1) federal law, (2) state law, and (3) the facts to which the law must be applied. The district court has plenary power with respect to federal law, *i.e.*, the meaning of the Constitution and the laws of the United States. *Townsend v. Sain*, 372 U.S. 293, 318, 83 S.Ct. 745, 759–60, 9 L.Ed.2d 770 (1963). However, the district court is bound by the state court's determination of state substantive law. *Wainwright v. Sykes*, 433 U.S. 72, 81, 97 S.Ct. 2497, 2503–04, 53 L.Ed.2d 594 (1977). Finally, the district court must defer to the factual findings of the state court if they have a basis in reason. *See* 28 U.S.C.A. § 2254.

The facts in this case are undisputed. Barry has a substantial asset, but he was not able to secure counsel on its security. The state court held as a matter of state law that his ownership of this asset made him ineligible for counsel at public expense. The district court viewed the Appellate Division's order of March 8, 1985 as an interference with the public defender's administrative determination that Barry was eligible for representation. It concluded that interference was unauthorized by state law, holding that the Appellate Division had no power to review a public defender's administrative finding of eligibility, citing *State v. Nilsen*, 214 N.J.Super. 23, 518 A.2d 240 (App.Div.1986).

■ The district court based this holding on a plausible interpretation of state law, but nevertheless one which conflicts with the Appellate Division's determination of its state's own law as applied to the facts of this case.[5] A district court may not substitute its interpretation of state law for that of the state court whose action it is reviewing. *Sykes*, 433 U.S. at 81, 97 S.Ct. at 2503–04. The text of the Appellate Division's order shows that it construed New Jersey statutory law on indigence as meaning that a person with Barry's assets is not entitled to counsel at public expense. The Appellate Division reviewed the public defender's determination that Barry was financially unable to get private counsel and reversed it. Therefore, the district court's conclusion that the Appellate Division had no jurisdiction to review the public defender's decision to provide representation is inappropriate.[6]

---

**5.** We have found no decision of the New Jersey Supreme Court compelling the rationale we attribute to the Appellate Division or the rationale the district court believes state law requires. We do not believe that this uncertainty leaves the district court free to predict what the New Jersey Supreme Court would do. In a diversity case, for example, federal courts act on cases which have not been before the state court for decision and must determine, and often predict, what substantive law to apply. In *habeas* cases, by contrast, district courts act after the state court has decided the state law and applied it to

the same record that is before the *habeas* court. To permit federal courts to speculate about the direction state law may take in the face of an authoritative final decision of a state court in the same case would directly interfere with the state's ability to decide the meaning of its own law.

**6.** We recognize that the interpretation of the Appellate Division's cryptic March 8, 1985 order as a reversal of the public defender's reconsidered determination that Barry was financially unable to retain private counsel is not the only

■ Nevertheless, the district court's decision to grant Barry a federal writ of *habeas corpus* may be justified. As interpreted by the United States Supreme Court, the Sixth Amendment requires a state to furnish counsel, on a first appeal of right, to persons accused of crimes if they lack the financial means to hire a private lawyer. *Douglas v. California,* 372 U.S. 353, 356, 83 S.Ct. 814, 816, 9 L.Ed.2d 811 (1963). When their constitutional right to counsel has been violated by a state's failure to provide counsel to an indigent, district courts are ordinarily required to grant *habeas corpus* relief.

■ In deciding whether the record shows that Barry was unable to secure counsel, we first consider whether the Appellate Division's ruling that Barry was not indigent is entitled to deference in the district court. Section 2254(d) provides, in pertinent part, as follows:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

....

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding[.]

28 U.S.C.A. § 2254(d)(5).[7] The Appellate Division's finding that Barry's property holdings make him ineligible for the assistance of the public defender is not entitled to a presumption of validity because indigence itself is not a fact, but a status deduced from historical facts themselves supported by the evidence in the record. The structure of § 2254(d) itself shows that the federal court must make an inquiry into the indigency of the applicant, if the issue is raised. The standard of indigency is necessarily a federal one. "If, at critical stages of the criminal proceedings against him, petitioner was financially unable to retain counsel, he had a constitutional right to have appointed counsel provided by the state." *Cuevas v. Wilson,* 264 F.Supp. 65, 70 (N.D.Cal.1966). "[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." *Gideon,* 372 U.S. at 344, 83 S.Ct. at 796. The same is true for a first appeal as of right. *Douglas,* 372 U.S. at 356, 83 S.Ct. at 816.

■ Indigence is not equivalent to total destitution. An accused with assets may be indigent. *Thiel v. Southern Pacific Co.,* 159 F.2d 61, 61 (9th Cir.1946). In some cases, liquidation of assets may be required. *Perry v. Chief of Police,* 660 F.Supp. 1546, 1552 (E.D.Ark.1987) (rejecting Arkansas's "able bodied and educated" test in favor of objective "present ability to pay" test).[8] The Constitution requires

possible one. It could also, although perhaps less plausibly, be interpreted as holding that the Appellate Division's prior order granting public defender leave to withdraw after that office's initial determination of Barry's non-eligibility was an affirmance constituting law of the case, which left Barry responsible for his *pro se* procedural derelictions. This interpretation is inconsistent with the New Jersey Supreme Court's December 4, 1984 order staying Barry's sentence so that the public defender could reconsider its finding that Barry was not eligible for representation. Moreover, there is a substantial danger of circular reasoning in justifying dismissal of a *pro se* appeal for procedural default when the appellant is unconstitutionally denied counsel.

7. The express language of § 2254(d)(5) shows Congress's intent to provide a federal remedy adequate to fully secure to all persons their constitutional right to counsel in state criminal cases.

8. In *Perry,* the district court listed the following four factors, as set out by W. LaFave and J. Israel, 2 Criminal Procedure § 11.2(e) (1984), for consideration in determining indigency:

states to meet a "present" need for counsel.[9] If by their nature an accused's assets cannot be timely reduced to cash and cash is required, the "present" financial inability to obtain counsel which defines indigence for Sixth Amendment purposes appears.[10]

The record shows that Barry did not have the then-present financial ability to obtain counsel and was, therefore, indigent. Evidence of the accused's unsuccessful efforts to obtain private counsel is uncontradicted.[11] Barry sought the services of all six attorneys recommended by the public defender and found none of them willing to forego an up-front payment because of his interest in his jointly held residence.[12] A joint interest in a valuable equity in a family residence does not necessarily negate indigence for purposes of an accused's Sixth Amendment right to counsel. Barry

has demonstrated his financial inability to obtain private counsel as a matter of law. Barry was not afforded his constitutional right to counsel on the direct appeal New Jersey provides. Accordingly, the district court's decision to grant a writ of *habeas corpus* was correct.

## V.

■■■■ Although the district court did not err in granting Barry a writ of *habeas corpus*, it went beyond its power in directly ordering the Appellate Division of the New Jersey Superior Court to reinstate his appeal. Both the historic nature of the writ and principles of federalism preclude a federal court's direct interference with a state court's conduct of state litigation. *Sykes*, 433 U.S. at 81, 97 S.Ct. at 2503–04. The

"(1) the defendant's income and assets; (2) the number of defendant's dependents; (3) the defendant's total indebtedness; and (4) the likely fee of retained counsel." *Id.* In that case the district court also adopted a fifth element, "the cost of the transcript," in cases involving an appeal. *Id.* We agree that these factors are helpful in determining indigency.

Compare the current version of the New Jersey statute on indigence amended by the New Jersey legislature, subsequent to these proceedings. In determining eligibility to receive representation by the public defender's office the statute now includes the following specific factors:

Eligibility for the services of the Office of the Public Defender shall be determined on the basis of the need of the defendant. Need shall be measured according to:

a. The financial ability of the defendant to engage and compensate competent private counsel;

b. The current employment, salary and income of the defendant including prospects for continued employment if admitted to bail;

c. The liquid assets of the defendant, including all real and personal property and bank accounts;

d. The ability of the defendant to make bail and the source of bail posted;

e. Where appropriate the willingness and ability of the defendant's immediate family, friends or employer to assist the defendant in meeting defense costs;

f. Where appropriate an assessment of the probable and reasonable costs of providing a private defense, based upon the status of the defendant, the nature and extent of the charges and the likely issues;

g. Where appropriate, the ability of the defendant to demonstrate convincingly that

he has consulted at least three private attorneys, none of whom would accept the case for a fee within his ability to pay; and

h. The ability of the defendant to provide all other necessary expenses of representation.

In the event that a determination of eligibility cannot be made before the time when the first services are to be rendered, or if an initial determination is found to be erroneous, the office shall undertake the same provisionally, and if it shall subsequently be determined that the defendant is ineligible it shall so inform the defendant, and the defendant shall thereupon be obliged to engage his own counsel and to reimburse the office for the cost of the services rendered to that time. N.J.Stat.Ann. § 2A:158A–14 (West Supp.1988).

**9.** They may perhaps elect to require an accused who has the capability to do so to reimburse the public treasury for the reasonable cost of providing counsel. Whether reimbursement is to be required, the extent to which an accused can be required to liquidate assets and the amount of reimbursement are matters not before us.

**10.** The federal standard for appointment of counsel by the district court "for any person financially unable to obtain adequate representation" is codified at 18 U.S.C.A. § 3006A (West Supp.1988).

**11.** Because the facts are uncontradicted, we find it unnecessary to remand this case to the district court for an evidentiary hearing.

**12.** Five of the attorneys specifically declined to accept a mortgage as security, and the sixth declined to accept a long-term financing arrangement. Jt.App. at 27–29.

writ of *habeas corpus* gives a court power to direct an official to produce the body of a person in custody in the court issuing the writ. The issuing court then has jurisdiction to free the person in custody from the restraints imposed upon his liberty if it determines the custody is illegal or illegally imposed. A *habeas* court does not have power to directly intervene in the process of the tribunal which has incorrectly subjected the petitioner to the custody of the respondent official. Since we agree with the district court's conclusion that the restraints on Barry's liberty violate his Sixth Amendment right to counsel on direct appeal of his state conviction, the respondent Brower can be ordered to produce Barry or free him of these illegal restraints. The respect due the tribunals of a sovereign state within our federal system, however, requires that its courts be given an opportunity to correct their own errors. Barry does not ask the district court or us to decide the merits of his state appeal. He seeks only an opportunity to present his arguments to the state appellate court with counsel's assistance. The state court can do this by deciding for itself whether Barry should be given an opportunity to effectively raise those issues he wishes on the merits of his direct appeal. An order in the nature of a decree *nisi* directing Barry's release from Brower's custody unless the state court acts to reinstate his appeal within thirty days of this decision is all that is required.

Accordingly, we will affirm the district court's order granting the writ, but modify its judgment to provide for Barry's release from the restraints of his state conviction unless, within thirty days of the issuance of our mandate, the Appellate Division of the New Jersey Superior Court enters an order reinstating his appeal and permitting the public defender to represent him on that appeal.