**Harold Eric HAM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–09–00331–CR.**

Court of Appeals of Texas,
Amarillo,
Panel D.

April 13, 2010.

Discretionary Review Refused
Aug. 25, 2010.

John Bennett, Attorney at Law, Amarillo, TX, for Appellant.

Luke McLean Inman, District Attorney, Wellington, TX, for Appellee.

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

## OPINION

PER CURIAM.

Appellant Harold Eric Ham has appealed his conviction and sentence. As an initial and ancillary matter, he challenges the trial court's denial of his request for court-appointed appellate counsel and a free record on appeal. Finding the trial court correctly found appellant is not indigent for purposes of appointment of counsel and a free record, we will affirm.

### Background

Appellant was convicted of murder and sentenced to 99 years confinement. He was represented by retained counsel at trial. Following sentencing, he requested appointment of appellate counsel. To support his request, appellant filed a sworn statement in the trial court reporting assets valued at $26,900. The calculation consisted of zero monthly income, $1,400 cash on hand, an automobile valued at $3,000, and real property valued at $30,000. From the value of the real estate, appellant subtracted $7,500 for a debt secured by a lien in favor of his trial counsel. Appellant's monthly obligations totaled $1,070. This total consisted of $300 for utilities, $150 for vehicle insurance, $120 for medications, and $500 for food. The trial court denied the application, finding appellant was not indigent.

Appellant filed a motion for rehearing which the trial court granted. It conducted an evidentiary hearing on the motion. At the hearing, appellant requested appointment of counsel as well as a free appellate record.[1] Appellant was the only witness. He testified his sister told him an attorney offered to represent him on appeal for $15,000.[2] With respect to the cost of the appellate record, appellant agreed the record would cost "several thousand dollars." There was no evidence of the payment terms or conditions required by the reporter and clerk for preparation of the appellate record.

Concerning assets, appellant testified he owns 300 acres of agricultural land in common with his two sisters. He valued his interest in this property at $30,000 but added the property had been listed with realtors for almost three years without a "serious" offer. On cross-examination, appellant explained he valued the property using the appraised value for ad valorem taxation. He was not certain of the listing price for sale but did not believe it was below $300 an acre. The land contains a creek and stock tank, and such wildlife as dove, deer and wild hogs. The property has not been leased for hunting; however, it is leased for cattle grazing and cultivation. Annual rental, according to appellant, is $3,200 which is deposited into an account to pay property taxes.

Appellant owns a 1998 Dodge pickup which he valued at $1,500 to $2,000. His

---

1. Tex.Code Crim. Proc. Ann. art. 26.04 (Vernon Supp.2009) (appointment of counsel); Tex.R.App. P. 20.2 (record).

2. This attorney signed appellant's notice of appeal and appeared at the hearing for appellant. He also signed appellant's brief on the indigence issue in this court.

mother uses the vehicle for transportation due to problems with her vehicle. Appellant referenced a checking account with a $1,500 or $1,000 balance, but added these funds belong to his mother. Appellant's mother places $100 every two weeks in his prison commissary account. He is permitted an $85 draw on the account every two weeks. According to appellant, the amount withdrawn largely meets his present expenses.

Regarding other expenses, appellant testified he has no children.[3] Appellant stated he owes trial counsel $7,500 to be paid on the sale of his land. There was no proof of a perfected lien against the property. He is also indebted to his aunt for $10,000. As for these obligations, appellant provided no specific terms of repayment.[4] At the hearing, the trial court took judicial notice of appellant's affidavit. It does not show repayment of any obligations in monthly installments.

The trial court found appellant is not indigent. In orally rendering its decision, the court stated it found common ownership of the real property might make a sale more difficult but the evidence did not show an effort by appellant to divide the property or obtain a loan secured by the property for payment of appellate counsel and the record. The court concluded appellant did not establish a *prima facie* case of indigence.

In response to appellant's claim of indigence, we abated the appeal and directed the clerk and reporter to prepare a record of the indigence proceedings.[5] We ordered the parties to then brief the issue. Appellant has filed a brief; the State has not.

## Analysis

◼ Concerning determination of a defendant's indigence for the purpose of appointed appellate counsel and a free appellate record, the Court of Criminal Appeals recently succinctly explained:

A defendant is indigent for purposes of the appointment of appellate counsel if he is not financially able to employ counsel. For purposes of qualifying as an indigent in order to receive a copy of the record furnished without charge, a defendant must be unable to pay or give security for the appellate record. Indigency determinations are made at the time the issue is raised and are decided on a case-by-case basis. Determining indigency for purposes of appointing counsel and indigency for purposes of obtaining a free record are discrete inquiries, but the factors to be considered are the same. A defendant can be found indigent for one purpose without being found indigent for the other. Relevant to both indigency determinations are the defendant's income, source of income, assets, property owned, outstanding ob-

---

**3.** Appellant's affidavit lists no dependents. Appellant testified in passing of expenses for insurance, food, and utilities. Given his testimony indicating his present expenses are satisfied by withdrawals from his commissary account, the trial court reasonably could have considered the references to insurance, food and utility expenses, and the similar expense amounts reflected in his affidavit, to indicate that appellant assisted his mother with these items before incarceration. The $500 monthly food expense appellant listed in his affidavit, for instance, could not be a personal expense after his incarceration. The record contains no explanation how, with no month-

ly income, appellant paid the $1070 monthly expenses he itemized in his affidavit.

**4.** The trial court reasonably could have concluded appellant's debts to his trial counsel and his aunt were not immediately payable. *See Whitehead v. State*, 130 S.W.3d 866, 878–79 (Tex.Crim.App.2004) (reaching similar conclusion with respect to indebtedness to family member).

**5.** *See Ham v. State*, 301 S.W.3d 930 (Tex.App.-Amarillo 2009) (per curiam order).

ligations, necessary expenses, the number and ages of dependents, and spousal income that is available to the defendant. Each county should have guidelines and financial standards that it applies to determine whether a defendant is indigent for purposes of appointing counsel.[6]

*McFatridge v. State,* 309 S.W.3d 1, 5–6 (Tex.Crim.App.2010) (internal quotation marks and footnotes omitted). As for the burden of proof and review of the trial court's determination, the court continued:

[The Court of Criminal Appeals] has adopted a two-step process to guide courts in making indigency determinations for purposes of a free record for appeal. First, the defendant must make a *prima facie* showing of indigency. Once the defendant satisfies this initial burden of production, the burden then shifts to the State to show that the defendant is not, in fact, indigent. This means, essentially, that unless there is some basis in the record to find the defendant's *prima facie* showing to be inaccurate or untrue, the trial court should accept it as sufficient to find him indigent. After a defendant establishes a *prima facie* showing of indigency, an appellate court can uphold a trial court's determination of non-indigence only if the record contains evidence supporting such a determination. In [*Whitehead,* 130 S.W.3d at 874, the Court of Criminal Appeals], recognized that the two-step process outlined above also applies when determining whether a person is indigent for purposes of appointed counsel. A reviewing court should uphold a trial court's ruling denying indigent status only if it finds that the trial court, having utilized this two-step process, rea-

sonably believed the defendant was not indigent.

*Id.* at 6 (internal quotation marks and footnotes omitted). *Prima facie* evidence is that quantum of proof on which the factfinder may find the matter in issue established unless rebutted by other evidence. *See Snoke v. State,* 780 S.W.2d 210, 213 (Tex.Crim.App.1989) (per curiam) (once *prima facie* showing of indigency is made out, defendant has shown entitlement to record unless evidence refuting claim is offered); *Thomas v. State,* 474 S.W.2d 692, 695 (Tex.Crim.App.1972) (discussing definition of *prima facie* evidence).

■ Here, the issue concerns the first step of the trial court's indigency determination, that is, whether the facts on which appellant relied are sufficient to establish a *prima facie* case of indigency.

The record indicates appellant has no obligation for the support of dependents, minimal to no monthly expenses, and no apparently obligatory terms of repayment for a loan from his aunt. He additionally owns a pickup with an equity value of $1,500 to $2,000. Of primary import to this discussion, appellant owns real property he values at $30,000. Even assuming a perfected lien of $7,500 against the property, a significant equity remains. Appellant's evidence does not establish his financial inability to employ counsel. We agree with the trial court's finding that appellant is not *prima facie* indigent. *See* Tex.Code Crim. Proc. Ann. art. 1.051(b) (Vernon Supp.2009).

Appellant cites *Barry v. Brower,* 864 F.2d 294 (3d Cir.1988) for the proposition that "[t]he Constitution requires states to meet a 'present' need for counsel. If by their nature an accused's assets cannot be timely reduced to cash and cash is re-

---

**6.** The record contains no indication of the standards promulgated by Hall County or their application by the trial court. *See* Tex. Code Crim. Proc. Ann. art. 26.04(a),(*l*) (Ver-

non Supp.2009) (countywide procedures for appointment of counsel must include procedures and financial standards for determining whether a defendant is indigent).

quired, the 'present' financial inability to obtain counsel which defines indigence for Sixth Amendment purposes appears." *Id.* at 299–300. The defendant in *Barry* possessed a joint interest in his home. He contacted six attorneys for representation. Five declined a mortgage as security and the sixth declined "long-term financing." *Id.* at 300 n. 12. Thus the evidence supported the defendant's need for cash to employ counsel.

This record contains no similar evidence of unsuccessful attempts by appellant to make use of his land, with or without its liquidation, to meet his present need for representation. It thus cannot be said that this record shows appellant requires cash to employ counsel or obtain an appellate record.

Agreeing with the trial court appellant failed to make a *prima facie* showing he is financially unable to employ counsel, or unable to pay or give security for the appellate record, we affirm its order denying appellant appointed counsel for appeal and a free appellate record.