NO. 07-09-00331-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



APRIL
13, 2010

 



 

HAROLD ERIC HAM, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 100TH DISTRICT COURT OF HALL
COUNTY;

 

NO. 3477; HONORABLE STUART MESSER, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and PIRTLE, JJ.

 

 

OPINION

 

 

Appellant
Harold Eric Ham has appealed his conviction and sentence.  As an initial and ancillary matter, he
challenges the trial court’s denial of his request for court-appointed
appellate counsel and a free record on appeal. 
Finding the trial court correctly found appellant is not indigent for
purposes of appointment of counsel and a free record, we will affirm.

 

 

Background

            Appellant was convicted of murder
and sentenced to 99 years confinement. 
He was represented by retained counsel at trial.  Following sentencing, he requested
appointment of appellate counsel.  To
support his request, appellant filed a sworn statement in the trial court
reporting assets valued at $26,900.  The
calculation consisted of zero monthly income, $1,400 cash on hand, an
automobile valued at $3,000, and real property valued at $30,000.  From the value of the real estate, appellant
subtracted $7,500 for a debt secured by a lien in favor of his trial counsel.  Appellant’s monthly obligations totaled
$1,070.  This total consisted of $300 for
utilities, $150 for vehicle insurance, $120 for medications, and $500 for food.  The trial court denied the application,
finding appellant was not indigent.  

            Appellant filed a motion for
rehearing which the trial court granted. 
It conducted an evidentiary hearing on the motion.  At the hearing, appellant requested
appointment of counsel as well as a free appellate record.[1]  Appellant was the only witness.  He testified his sister told him an attorney
offered to represent him on appeal for $15,000.[2]  With respect to the cost of the appellate
record, appellant agreed the record would cost “several thousand dollars.”  There was no evidence of the payment terms or
conditions required by the reporter and clerk for preparation of the appellate
record.

Concerning
assets, appellant testified he owns 300 acres of agricultural land in common
with his two sisters.  He valued his
interest in this property at $30,000 but added the property had been listed
with realtors for almost three years without a “serious” offer.  On cross-examination, appellant explained he
valued the property using the appraised value for ad valorem taxation.  He was not certain of the listing price for
sale but did not believe it was below $300 an acre.  The land contains a creek and stock tank, and
such wildlife as dove, deer and wild hogs. 
The property has not been leased for hunting; however, it is leased for
cattle grazing and cultivation.  Annual
rental, according to appellant, is $3,200 which is deposited into an account to
pay property taxes.  

Appellant
owns a 1998 Dodge pickup which he valued at $1,500 to $2,000.  His mother uses the vehicle for
transportation due to problems with her vehicle.  Appellant referenced a checking account with
a $1,500 or $1,000 balance, but added these funds belong to his mother.  Appellant’s mother places $100 every two
weeks in his prison commissary account. 
He is permitted an $85 draw on the account every two weeks. According to
appellant, the amount withdrawn largely meets his present expenses.

Regarding
other expenses, appellant testified he has no children.[3]  Appellant stated he owes trial counsel $7,500
to be paid on the sale of his land. 
There was no proof of a perfected lien against the property.  He is also indebted to his aunt for
$10,000.  As for these obligations,
appellant provided no specific terms of repayment.[4]  At the hearing, the trial court took judicial
notice of appellant’s affidavit.  It does
not show repayment of any obligations in monthly installments.  

The trial
court found appellant is not indigent. 
In orally rendering its decision, the court stated it found common
ownership of the real property might make a sale more difficult but the evidence
did not show an effort by appellant to divide the property or obtain a loan
secured by the property for payment of appellate counsel and the record.  The court concluded appellant did not
establish a prima facie case of
indigence.

In response
to appellant’s claim of indigence, we abated the appeal and directed the clerk
and reporter to prepare a record of the indigence proceedings.[5]  We ordered the parties to then brief the
issue.  Appellant has filed a brief; the
State has not.

Analysis

            Concerning determination of a
defendant’s indigence for the purpose of appointed appellate counsel and a free
appellate record, the Court of Criminal Appeals recently succinctly explained:

A defendant is indigent for purposes of the
appointment of appellate counsel if he is not financially able to employ
counsel.  For purposes of qualifying as
an indigent in order to receive a copy of the record furnished without charge,
a defendant must be unable to pay or give security for the appellate
record.  Indigency determinations are
made at the time the issue is raised and are decided on a case-by-case
basis.  Determining indigency for
purposes of appointing counsel and indigency for purposes of obtaining a free
record are discrete inquiries, but the factors to be considered are the same. A
defendant can be found indigent for one purpose without being found indigent
for the other. Relevant to both indigency determinations are the defendant’s
income, source of income, assets, property owned, outstanding obligations,
necessary expenses, the number and ages of dependents, and spousal income that
is available to the defendant. Each county should have guidelines and financial
standards that it applies to determine whether a defendant is indigent for
purposes of appointing counsel.[6]

McFatridge v. State, No. PD-1494-08, 2010 Tex. Crim. App. Lexis 4, at *8-10 (Tex.Crim.App.
Jan. 27, 2010) (internal quotation marks and footnotes omitted).  As for the burden of proof and review of the
trial court’s determination, the court continued:

[The Court of Criminal Appeals] has adopted a
two-step process to guide courts in making indigency determinations for
purposes of a free record for appeal. First, the defendant must make a prima facie showing of indigency.  Once the defendant satisfies this initial
burden of production, the burden then shifts to the State to show that the
defendant is not, in fact, indigent. 
This means, essentially, that unless there is some basis in the record
to find the defendant’s prima facie
showing to be inaccurate or untrue, the trial court should accept it as
sufficient to find him indigent.  After a
defendant establishes a prima facie
showing of indigency, an appellate court can uphold a trial court’s
determination of non-indigence only if the record contains evidence supporting
such a determination.  In [Whitehead, 130 S.W.3d at 87, the Court
of Criminal Appeals], recognized that the two-step process outlined above also
applies when determining whether a person is indigent for purposes of appointed
counsel.  A reviewing court should uphold
a trial court’s ruling denying indigent status only if it finds that the trial
court, having utilized this two-step process, reasonably believed the defendant
was not indigent. 

Id. at *10-11 (internal quotation
marks and footnotes omitted).  Prima facie evidence is that quantum of
proof on which the factfinder may find the matter in issue established unless
rebutted by other evidence.  See Snoke v. State, 780 S.W.2d 210, 213
(Tex.Crim.App. 1989) (per curiam) (once prima
facie showing of indigency is made out, defendant has shown entitlement to
record unless evidence refuting claim is offered); Thomas v. State, 474 S.W.2d 692, 695 (Tex.Crim.App. 1972)
(discussing definition of prima facie
evidence).

Here, the
issue concerns the first step of the trial court’s indigency determination,
that is, whether the facts on which appellant relied are
sufficient to establish a prima facie
case of indigency.  

The record
indicates appellant has no obligation for the support of dependents, minimal to
no monthly expenses, and no apparently obligatory terms of repayment for a loan
from his aunt.  He additionally owns a
pickup with an equity value of $1,500 to $2,000.  Of primary import to this discussion,
appellant owns real property he values at $30,000.  Even assuming a perfected lien of $7,500
against the property, a significant equity remains.  Appellant’s evidence does not establish his
financial inability to employ counsel. We agree with the trial court’s finding that
appellant is not prima facie indigent.   See Tex. Code Crim. Proc. Ann. art. 1.051(b)
(Vernon Supp. 2009).

Appellant cites Barry v. Brower, 864 F.2d 294 (3d Cir. 1988) for the proposition
that “[t]he Constitution requires states to meet a ‘present’ need for
counsel.  If by their nature an accused’s
assets cannot be timely reduced to cash and cash is required, the ‘present’
financial inability to obtain counsel which defines indigence for Sixth
Amendment purposes appears.”  Id. at 299-300.  The defendant in Barry possessed a joint interest in his home.  He contacted six attorneys for
representation.  Five declined a mortgage
as security and the sixth declined “long-term financing.”  Id.
at 300 n.12. 
Thus the evidence supported the defendant’s need for cash to employ
counsel.

This record contains no similar
evidence of unsuccessful attempts by appellant to make use of his land, with or
without its liquidation, to meet his present need for representation.  It thus cannot be said that this record shows
appellant requires cash to employ counsel or obtain an appellate record.

Agreeing
with the trial court appellant failed to make a prima facie showing he is financially unable to employ counsel, or
unable to pay or give security for the appellate record, we affirm its order denying appellant appointed
counsel for appeal and a free appellate record. 


 

Per
Curiam

Publish.








 











[1]  Tex. Code Crim. Proc. Ann. art. 26.04
(Vernon Supp. 2009) (appointment of counsel); Tex. R. App. P. 20.2 (record).

 





[2]  This attorney
signed appellant’s notice of appeal and appeared at the hearing for
appellant.  He also signed appellant’s brief
on the indigence issue in this court.  





[3] Appellant’s affidavit lists no dependents.  Appellant
testified in passing of expenses for insurance, food, and utilities.  Given his testimony indicating his present
expenses are satisfied by withdrawals from his commissary account, the trial
court reasonably could have considered the references to insurance, food and
utility expenses, and the similar expense amounts reflected in his affidavit,
to indicate that appellant assisted his mother with these items before
incarceration.  The $500 monthly food
expense appellant listed in his affidavit, for instance, could not be a
personal expense after his incarceration. 
The record contains no explanation how, with no monthly income,
appellant paid the $1070 monthly expenses he itemized in his affidavit.  

 





[4] The trial court reasonably could have concluded
appellant’s debts to his trial counsel and his aunt were
not immediately payable.  See Whitehead v. State, 130 S.W.3d 866, 878-79 (Tex.Crim.App. 2004)
(reaching similar conclusion with respect to indebtedness to family member).


 





[5]  See Ham v. State, 301 S.W.3d 930, Nos.
07-09-0331-CR, 07-09-0385-CR, 2009 Tex. App. Lexis 9657 (Tex.App.--Amarillo
December 18, 2009) (per curiam order).

 





[6]  The record
contains no indication of the standards promulgated by Hall County or their
application by the trial court.  See Tex. Code Crim. Proc.
Ann. art. 26.04(a),(l) (Vernon Supp. 2009)
(countywide procedures for appointment of counsel must include procedures and
financial standards for determining whether a defendant is indigent).