NO. 07-10-0115-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL E   

 

 AUGUST 23, 2011



 

 



 

 

GAVINO DURON, APPELLANT

 

v.

 

THE STATE OF TEXAS,  APPELLEE 



 

 



 

 FROM THE COURT-AT-LAW NO. SEVEN OF
TRAVIS COUNTY;

 

NO. C-1-CR-08-500442; HONORABLE ELISABETH A. EARLE, JUDGE



 

 



 

Before QUINN, C.J., and PIRTLE, J., and BOYD, S.J.[1]

 

 

MEMORANDUM OPINION

Following a jury trial, Appellant, Gavino Duron, was
convicted of assault with bodily injury and sentenced to two hundred-fifty days
confinement.[2]  In a single issue, Appellant asserts the
trial court abused its discretion by denying his motion for a mistrial after a witness
violated a pretrial motion in limine.  We
affirm.

Background

            On April 30, 2008, an Assistant
County Attorney of Travis County filed an information[3]
charging Appellant with intentionally, knowingly and recklessly causing bodily
injury to Sarah Vasquez by striking her on and about the head with his hand and
seizing her on and about her torso, also with his hand, on or about December 2,
2007.  Prior to trial, Appellant filed a Motion in Limine, requesting "the
State's attorney and the State's witnesses not to allude to . . . [a]ny
evidence of, details of, or references or allusions to the [Appellant}
assaulting witness Anjelica [sic] Ramos on prior occasions."  That motion was granted.  A jury trial on the merits was conducted
February 25, 2010.

            At trial, the State produced four
witnesses: Angelica Ramos,[4]
Sarah Vasquez, Officer Mark Jelesijevic, and Detective Robert Holsonback.  Their testimony established that, on December
2, 2007, Ramos, two of her children and Sarah Vasquez accompanied Appellant to
a restaurant.  Before they were seated,
Appellant became upset over a remark by Ramos and left the restaurant.  Because Appellant was upset, Ramos decided to
drive him home.

            After dropping her children off at
their grandmother's house, Ramos proceeded to drive Appellant home.  Appellant was seated in the right front
passenger seat and Vasquez was seated behind Ramos in the back seat.  En route, Ramos returned her boyfriend's
phone call and Appellant became angry. 
He leaned over Ramos and told her that, if she didn't give him her
phone, he was going to hit her.  

            Vasquez, who had been quiet up to
this point, interjected that Appellant was not going to hit her friend and that
he needed to back off.  Appellant then
turned around in his seat facing Vasquez and threatened her.  When Appellant started coming toward the back
seat, Vasquez held her hand up to his face and told him he needed to back
away.  Appellant then hit Vasquez in her
forehead as she fought back.  Ramos drove
as quickly as possible to Appellant's apartment while this scuffle continued.  When they arrived at Appellant's apartment,
Appellant opened the passenger door, grabbed Vasquez by her arms and tried to
pull her from the back seat to the front seat and out of the car.  Eventually, Appellant stopped, spit in
Vasquez's face and ran to his apartment.  
Afterwards, Vasquez felt dizziness and confusion.

            When they arrived at Ramos's
apartment, there was a big bump shaped like an egg in the center of Vasquez's forehead.  The police were called.  Officer Mark Jelesijevic took an oral
statement from Vasquez and photographed her injuries.  Detective Robert Holsonback later obtained a
written statement from Vasquez and charged Appellant with assault causing
bodily injury.  

            During the State's direct examination
of Ramos, the following exchange occurred:

STATE:          So [Appellant] got into your personal
space?

 

RAMOS:        Oh,
yeah.  He completely leaned right over
me.

 

STATE: 
        Would you consider that
threatening, what he was doing towards you?

 

RAMOS: 
      I considered it a threat
right off the bat when he told me he was going to hit me.

 

STATE:          Did
you think he might follow through?

 

RAMOS:        Yes, ma'am.  He always
has.

 

            At
that point, Appellant's counsel objected to the testimony as violating the
prior motion in limine and requested that the court instruct the jury to
disregard the last statement.  The court
granted that request, whereupon Appellant's counsel immediately moved for a
mistrial.  After instructing the jury to
disregard the statement, and receiving their assurance that they could, the
trial proceeded without a formal ruling on counsel's motion for mistrial.[5]

            At the trial's conclusion, the jury
found Appellant guilty of assault causing bodily injury and Appellant was
sentenced by the court to two hundred-fifty days confinement.  This appeal followed.




 

Discussion

            In
his single issue, Appellant contends the trial court abused its discretion by
failing to grant a mistrial after Ramos testified that Appellant always followed through on his threats.  Appellant asserts Ramos's testimony was highly
prejudicial and incurable.  The State
asserts that any prejudice to Appellant due to Ramos's testimony was cured by
the trial court's instruction.  

            A trial court's denial of a motion
for mistrial is reviewed for an abuse of discretion and must be upheld if it
was within the zone of reasonable disagreement. 
Ocon v. State, 284 S.W.3d 880,
884 (Tex.Crim.App. 2009).  A mistrial
halts trial proceedings when error is so prejudicial that the expenditure of
further time and expense would be wasteful and futile; Ladd v. State, 3 S.W.3d 547, 567 (Tex.Crim.App. 1999), and should
be granted "only when residual prejudice remains" after less drastic
alternatives are explored.  Barnett v. State, 161 S.W.3d 128, 134 (Tex.App.--Fort
Worth 2005), aff'd, 189 S.W.3d 272
(Tex.Crim.App. 2006).  

            Whether a witness's improper
reference to an extraneous offense warrants a mistrial depends on the
particular facts of the case.  Ladd, 3 S.W.3d at 567.  A mistrial is required only when the improper
question or evidence is clearly prejudicial to the defendant and is of such
character as to suggest the impossibility of withdrawing the impression produced
in the minds of the jurors.  Young v. State, 283 S.W.3d 854, 878
(Tex.Crim.App. 2009) (per curiam), cert. denied, ___ U.S. ___, 130 S.Ct.
1015, 175 L.Ed.2d 622 (2009).  An
instruction to disregard will ordinarily cure error associated with a witness's
improper reference to an extraneous offense committed by the defendant.  Id.
at 878; Kemp v. State, 846 S.W.2d
289, 308 (Tex.Crim.App. 1992) (en banc)
(instruction by trial judge to disregard will suffice to cure an inadmissible
reference to or implying of extraneous offenses).  Further, we presume the jury followed the
trial court's instruction to disregard testimony in the absence of evidence
that it did not.  Ladd, 3 S.W.3d at 567 (quoting Gardner
v. State, 730 S.W.2d 675, 696 (Tex.Crim.App. 1987)); State v. Boyd, 202 S.W.3d 393, 402 (Tex.App.--Dallas 2006, pet.
ref'd). 

            Considering the facts of this case,
we conclude the trial court did not abuse its discretion by denying Appellant's
motion for mistrial.  The jury heard testimony
from two witnesses that Appellant assaulted Vasquez and viewed photographs
taken by police shortly after the incident documenting Vasquez's injuries and
corroborating their testimony.  Nothing
in the record suggests the jury would have reached a different verdict absent
the complained-of statement.  Further, the
implied reference to Appellant's prior threats and the certainty with which he
carried them out was brief, did not contain any substantive facts, was not
repeated by the State, and was followed by a prompt instruction to disregard.  Although Appellant asserts otherwise, nothing
in the record suggests the reference to his prior threats was so "highly
prejudicial and incurable" that the trial court erred by denying his
motion for mistrial.  See Simpson v. State, 119 S.W.3d 262,
272 (Tex.Crim.App. 2003), cert. denied,
542 U.S. 905, 124 S.Ct. 2837, 159 L.Ed.2d 270 (2004).  See
also Gardner v. State, 730 S.W.2d 675, 697 (Tex.Crim.App. 1987) ("The
bare fact [that appellant had been to the penitentiary], unembellished, was not
so inflammatory as to undermine the efficacy of the trial court's instruction
to disregard it.")  Having reviewed
the record, we cannot say the trial court's ruling was outside the zone of
reasonable disagreement.  Accordingly, we
overrule Appellant's sole issue.  

Conclusion

            The
trial court's judgment is affirmed.    

 

                                                                                    Patrick
A. Pirtle

                                                                                          Justice

 

Do not publish.

 

            

 

 











[1]John
T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.  Tex. Gov't Code Ann. §
75.002.(a)(1) (West 2005).

 





[2]The
offense of assault with bodily injury is a Class A misdemeanor.  See Tex.
Penal Code Ann. § 22.01(a) & (b) (West 2011).

 





[3]Although
the Information named the defendant
as "Gabino Duron," motions filed by Appellant, the Charge of the Court and the Judgment reflect "Gavino
Duron."  We express no opinion as to
the correct name of Appellant.

 





[4]Ramos
testified that she had a prior relationship with Appellant for approximately
six years and had two children by him.

 





[5]The
record reflects the following:

 

COURT:  All right. 
At this point in time, I'm going to ask you to disregard the last
statement made by this witness [Ramos]. 
And if you feel like you cannot disregard that, I need to know at this
point.  So I can rely that each of you
can disregard that last comment made by the witness as struck from the record;
is that correct?

 

JURY:  (Nodding heads).

 

COURT:  All right. 
Hearing everyone saying they can agree, so we can proceed.  Thank you.








>[5]  We ordered the parties to then brief the
issue.  Appellant has filed a brief; the
State has not.

Analysis

            Concerning determination of a
defendant’s indigence for the purpose of appointed appellate counsel and a free
appellate record, the Court of Criminal Appeals recently succinctly explained:

A defendant is indigent for purposes of the
appointment of appellate counsel if he is not financially able to employ
counsel.  For purposes of qualifying as
an indigent in order to receive a copy of the record furnished without charge,
a defendant must be unable to pay or give security for the appellate
record.  Indigency determinations are
made at the time the issue is raised and are decided on a case-by-case
basis.  Determining indigency for
purposes of appointing counsel and indigency for purposes of obtaining a free
record are discrete inquiries, but the factors to be considered are the same. A
defendant can be found indigent for one purpose without being found indigent
for the other. Relevant to both indigency determinations are the defendant’s
income, source of income, assets, property owned, outstanding obligations,
necessary expenses, the number and ages of dependents, and spousal income that
is available to the defendant. Each county should have guidelines and financial
standards that it applies to determine whether a defendant is indigent for
purposes of appointing counsel.[6]

McFatridge v. State, No. PD-1494-08, 2010 Tex. Crim. App. Lexis 4, at *8-10 (Tex.Crim.App.
Jan. 27, 2010) (internal quotation marks and footnotes omitted).  As for the burden of proof and review of the
trial court’s determination, the court continued:

[The Court of Criminal Appeals] has adopted a
two-step process to guide courts in making indigency determinations for
purposes of a free record for appeal. First, the defendant must make a prima facie showing of indigency.  Once the defendant satisfies this initial
burden of production, the burden then shifts to the State to show that the
defendant is not, in fact, indigent. 
This means, essentially, that unless there is some basis in the record
to find the defendant’s prima facie
showing to be inaccurate or untrue, the trial court should accept it as
sufficient to find him indigent.  After a
defendant establishes a prima facie
showing of indigency, an appellate court can uphold a trial court’s
determination of non-indigence only if the record contains evidence supporting
such a determination.  In [Whitehead, 130 S.W.3d at 87, the Court
of Criminal Appeals], recognized that the two-step process outlined above also
applies when determining whether a person is indigent for purposes of appointed
counsel.  A reviewing court should uphold
a trial court’s ruling denying indigent status only if it finds that the trial
court, having utilized this two-step process, reasonably believed the defendant
was not indigent. 

Id. at *10-11 (internal quotation
marks and footnotes omitted).  Prima facie evidence is that quantum of
proof on which the factfinder may find the matter in issue established unless
rebutted by other evidence.  See Snoke v. State, 780 S.W.2d 210, 213
(Tex.Crim.App. 1989) (per curiam) (once prima
facie showing of indigency is made out, defendant has shown entitlement to
record unless evidence refuting claim is offered); Thomas v. State, 474 S.W.2d 692, 695 (Tex.Crim.App. 1972)
(discussing definition of prima facie
evidence).

Here, the
issue concerns the first step of the trial court’s indigency determination,
that is, whether the facts on which appellant relied are
sufficient to establish a prima facie
case of indigency.  

The record
indicates appellant has no obligation for the support of dependents, minimal to
no monthly expenses, and no apparently obligatory terms of repayment for a loan
from his aunt.  He additionally owns a
pickup with an equity value of $1,500 to $2,000.  Of primary import to this discussion,
appellant owns real property he values at $30,000.  Even assuming a perfected lien of $7,500
against the property, a significant equity remains.  Appellant’s evidence does not establish his
financial inability to employ counsel. We agree with the trial court’s finding that
appellant is not prima facie indigent.   See Tex. Code Crim. Proc. Ann. art. 1.051(b)
(Vernon Supp. 2009).

Appellant cites Barry v. Brower, 864 F.2d 294 (3d Cir. 1988) for the proposition
that “[t]he Constitution requires states to meet a ‘present’ need for
counsel.  If by their nature an accused’s
assets cannot be timely reduced to cash and cash is required, the ‘present’
financial inability to obtain counsel which defines indigence for Sixth
Amendment purposes appears.”  Id. at 299-300.  The defendant in Barry possessed a joint interest in his home.  He contacted six attorneys for
representation.  Five declined a mortgage
as security and the sixth declined “long-term financing.”  Id.
at 300 n.12. 
Thus the evidence supported the defendant’s need for cash to employ
counsel.

This record contains no similar
evidence of unsuccessful attempts by appellant to make use of his land, with or
without its liquidation, to meet his present need for representation.  It thus cannot be said that this record shows
appellant requires cash to employ counsel or obtain an appellate record.

Agreeing
with the trial court appellant failed to make a prima facie showing he is financially unable to employ counsel, or
unable to pay or give security for the appellate record, we affirm its order denying appellant appointed
counsel for appeal and a free appellate record. 


 

Per
Curiam

Publish.








 











[1]  Tex. Code Crim. Proc. Ann. art. 26.04
(Vernon Supp. 2009) (appointment of counsel); Tex. R. App. P. 20.2 (record).

 





[2]  This attorney
signed appellant’s notice of appeal and appeared at the hearing for
appellant.  He also signed appellant’s brief
on the indigence issue in this court.  





[3] Appellant’s affidavit lists no dependents.  Appellant
testified in passing of expenses for insurance, food, and utilities.  Given his testimony indicating his present
expenses are satisfied by withdrawals from his commissary account, the trial
court reasonably could have considered the references to insurance, food and
utility expenses, and the similar expense amounts reflected in his affidavit,
to indicate that appellant assisted his mother with these items before
incarceration.  The $500 monthly food
expense appellant listed in his affidavit, for instance, could not be a
personal expense after his incarceration. 
The record contains no explanation how, with no monthly income,
appellant paid the $1070 monthly expenses he itemized in his affidavit.  

 





[4] The trial court reasonably could have concluded
appellant’s debts to his trial counsel and his aunt were
not immediately payable.  See Whitehead v. State, 130 S.W.3d 866, 878-79 (Tex.Crim.App. 2004)
(reaching similar conclusion with respect to indebtedness to family member).


 





[5]  See Ham v. State, 301 S.W.3d 930, Nos.
07-09-0331-CR, 07-09-0385-CR, 2009 Tex. App. Lexis 9657 (Tex.App.--Amarillo
December 18, 2009) (per curiam order).

 





[6]  The record
contains no indication of the standards promulgated by Hall County or their
application by the trial court.  See Tex. Code Crim. Proc.
Ann. art. 26.04(a),(l) (Vernon Supp. 2009)
(countywide procedures for appointment of counsel must include procedures and
financial standards for determining whether a defendant is indigent).