PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1393
_____

UNITED STATES OF AMERICA

v.

JOSEPH KONRAD,
          Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Criminal No. 2-11-cr-00015-001
(Honorable Michael M. Baylson)
_____

Argued: April 2, 2013

Before:  SCIRICA, AMBRO, and FUENTES, *Circuit Judges*.

(Filed : September 20, 2013)

Brett G. Sweitzer, Esq. [ARGUED]
Federal Community Defender Office for the Eastern District
of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA  19106

     *Counsel for Appellant*

Mary Kay Costello, Esq. [ARGUED]
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA  19106

     *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

**SCIRICA**, *Circuit Judge.*

The Criminal Justice Act requires courts to furnish legal counsel to criminal defendants "financially unable to obtain adequate representation."  18 U.S.C. § 3006A(a). Joseph Konrad was appointed a federal defender under the Criminal Justice Act (CJA), based on information he provided in a financial disclosure affidavit.  At sentencing, the District Court found several discrepancies between Konrad's pre-sentencing report and his financial disclosure.  The court ordered Konrad to show cause that he was financially eligible

2

for appointed counsel. After a hearing, the court found Konrad had significant funds in two individual retirement accounts so he was not financially unable to pay the cost of legal representation. After appointing a Master to determine the cost of private legal representation, the court ordered Konrad to repay $6,000 because he was not financially eligible to be represented by the federal defender.

We hold individual retirement funds and jointly-held bank accounts can be available funds within the meaning of the Criminal Justice Act. We also hold the District Court did not abuse its discretion in ordering Konrad to repay the market value of his legal representation rather than the hourly rate paid to an attorney appointed under the Criminal Justice Act.

## I.

The Federal Community Defender Office for the Eastern District of Pennsylvania was appointed by a Magistrate Judge to defend Joseph Konrad against charges of making fraudulent statements to the Federal Aviation Administration. Konrad pleaded guilty. As noted, upon sentencing the District Court noted disparities between the assets Konrad reported in the CJA Form 23 Financial Affidavit of November 15, 2010 and those in the presentencing report. The court ordered Konrad to show cause he was financially eligible for court-appointed counsel. The court found Konrad failed to disclose the $258,000 value of his home, and only reported $50,000 in retirement accounts

worth $70,463.[1]  Konrad underreported his household monthly income by $4,300, stating his monthly household income was $2,500 in the Financial Disclosure Affidavit when it was actually $8,600.

The District Court found the $70,463 in the individual retirement accounts was available to pay for Konrad's legal representation.  The court did not reach the question whether a bank account worth $34,893 Konrad held jointly with his wife was also available because the retirement savings accounts had several times the amount needed to pay for legal counsel.

The District Court found Konrad had financial resources to pay for his own defense while meeting the cost of the necessities of life.  The District Court ordered Konrad to pay for his legal representation and appointed a Master to determine the cost of private criminal defense counsel in this case.  The Master surveyed hourly rates in the relevant geographic area, and selected the lowest estimate, $400 an hour.  The Master determined the cost of Konrad's defense was $6,000, based on the hourly rate and number of hours. Konrad appeals from that order.

---

[1] Konrad included the cost of the mortgage and other joint household expenses in his affidavit, but not the value of the home.  The District Court found Konrad's home was encumbered by a $230,000 mortgage.  Accordingly, the home was not an available asset.

## II.[2]

### A.

The Criminal Justice Act requires district courts to provide legal counsel for criminal defendants charged with a felony when they are unable to pay for an attorney. 18 U.S.C. § 3006A(a)(1)(A). A defendant bears the burden to prove he is unable to pay for the cost of representation. *United States v. Evans*, 155 F.3d 245, 252 n.8 (3d Cir. 1998) (citing *United States v. Lefkowitz*, 125 F.3d 608, 621 (8th Cir. 1997)). "Whenever the United States magistrate judge or the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney, to the bar association or legal aid agency or community defender organization which provided the appointed attorney . . . ." 18 U.S.C. § 3006A(f). The Guide to Judiciary Policy Guidelines for Administering the CJA and Related Statutes explicitly recommends an evaluation of financial eligibility after the presentencing report becomes available "in order to make a final determination concerning whether the person then has funds available to pay for some or all of the costs of representation." 7A *Guide to Judiciary Policy* § 210.40.30

---

[2] The District Court had jurisdiction under 18 U.S.C.A. § 3231. This court has jurisdiction under 28 U.S.C. § 1291. Reimbursement ordered under 18 U.S.C. § 3006A(f) is reviewed for abuse of discretion. *United States v. Parker*, 439 F.3d 81, 99 (2d Cir. 2006). We exercise plenary review over a district court's interpretation of the statute. *United States v. Williams*, 675 F.3d 274, 277 (3d Cir. 2012).

5

("[E]rroneous determinations of eligibility may be corrected at a later time.").

"A person is 'financially unable to obtain counsel' . . . if the person's net financial resources and income are insufficient to obtain qualified counsel" considering "the cost of . . . the necessities of life." *Id.* at § 210.40.30(a) (quoting 18 U.S.C. § 3006A(6)). The Guide instructs courts to "consider pertinent information contained in the presentence report, the court's intention with respect to fines and restitution, and all other available data bearing on the person's financial condition, in order to make a final determination concerning whether the person then has funds available to pay for some or all of the costs of representation." *Id.* at § 210.40.30(d) ("At the time of sentencing, in appropriate circumstances, [the court] should order the person to reimburse the CJA appropriation for such costs.").[3] "In the absence of a serious abuse of discretion, a district judge's findings as to 'availability' of funds, if supported by an 'adequate inquiry', will not be disturbed on appeal." *United States v. Bracewell*, 569 F.2d 1194, 1200 (2d Cir. 1978). The District Court properly ordered Konrad to pay the cost of court-appointed counsel, because Konrad's net

---

[3] Contrary to Konrad's assertion, no court has interpreted the CJA to require a finding that a defendant provided false information, or that a defendant's financial condition materially improved or that new information became available to order reimbursement, nor do we. Even so, here the defendant failed to disclose significant assets in his initial affidavit, and new information regarding the value of his home and retirement savings accounts did become available in the presentencing report.

6

financial resources exceed the amount needed for the necessities of life.

**B.**

We consider "the defendant's personal and family needs and the liquidity of his finances." *Evans*, 155 F.3d at 252 n.8 (citing *Museitef v. United States*, 131 F.3d 714, 716 (8th Cir. 1997); *Bracewell*, 569 F.2d at 1199). Assets are available when a defendant has control over or discretionary use of them. *Fullan v. Comm'r of Corr.*, 891 F.2d 1007, 1011 (2d Cir. 1989). The test for determining a defendant's ability to pay "is whether repayment would cause such financial hardship as to make it impractical or unjust." *Museitef*, 131 F.3d at 716 (citing *Bracewell*, 569 F.2d at 1199).

**1.**

The District Court found Konrad was able to pay because he had $70,463 in individual retirement savings accounts—more than ten times the amount he was ordered to pay. Konrad contends the IRAs are not liquid because of the early-withdrawal penalty,[4] and cites to *United States v. Lexin* for the proposition IRAs are future income. 434 F. Supp. 2d 836, 844 (S.D. Cal. 2006). We do not agree that IRAs are future income because they are an accumulation of past earnings paid into the account and accrued investment income. Only taxation on those earnings is deferred. 26

---

[4] Early withdrawal of funds from an IRA encumbers a 10% penalty, in addition to normal income taxes. 26 U.S.C. § 72(q).

U.S.C. § 72(b).[5]  Accordingly, we agree with the District Court's finding that IRAs are not future income. *United States v. Konrad*, No. 11-15, 2011 WL 6739464, at *5 (E.D. Pa. Dec. 21, 2011) (noting that other courts rejected the *Lexin* view that IRAs are future income for CJA purposes (citing *United States v. Pani*, No. 08-40034, 2011 WL 4344336, at *2 (D. Mass. Aug. 3, 2011); *In re Extradition of Patel*, No. 08-430, 2008 WL 896069, at *2 (D. Or. Mar. 28, 2008))).

We consider the liquidity of assets in determining a defendant's ability to pay. *Evans*, 155 F.3d at 252 n.8.  Assets may not be available "[i]f by their nature [those] assets cannot be timely reduced to cash and cash is required . . . ." *Barry v. Brower*, 864 F.2d 294, 300 (3d Cir. 1988) (finding the defendant was unable to leverage his home equity to obtain legal counsel).  "Before a finding of 'availability' can properly be made, the district judge should be satisfied that, in ordering reimbursement in any specified amount, the defendant will not suffer extreme hardship as a consequence of being deprived of his funds." *Bracewell*, 569 F.2d at 1199.

"In some cases, liquidation of assets may be required." *Barry*, 864 F.2d at 299 (citation omitted).  In *Barry*, we found the defendant's home valued at $80,000 did not disqualify him from public counsel because evidence showed six private attorneys recommended by the public defender's office declined to take a security interest in his house in lieu of legal fees. *Id*. at 300.  Moreover, the defendant could not sell his

---

[5] Moreover, the Second Circuit considered future investment income the defendant anticipated in *United States v. O'Neil*, 118 F.3d 65, 74 (2d Cir. 1997), finding the defendant ineligible for court-appointed counsel.

home because it was held jointly with his wife who refused to sell or encumber the home. *Id.* at 297. Finally, the defendant's debts exceeded his assets, as he owed an $85,000 fine to the state. *Id.* Accordingly, the defendant did not have funds available to meet his legal costs. *Id.* at 300.

In contrast, the defendant in *United States v. Fincher* was required to sell his property, despite his wife's dower interest, because the value of the property encumbered by the dower interest was still sufficient to cover the defendant's legal costs. 593 F.3d 702, 707 (8th Cir. 2010). Other courts have found defendants able to afford legal counsel because they held substantial equity in their property. *See, e.g.*, *United States v. Simmers*, 911 F. Supp. 483, 486-87 (D. Kan. 1995) ("While the defendant's primary asset is not liquid, the equity in his home is substantial . . . . The defendant has not established extreme hardship in the event of the liquidation or mortgage of the asset."); *United States v. Bedoya*, No. 89 CR. 803, 1990 WL 194934, at *3 (S.D.N.Y. Nov. 28, 1990) (finding the "defendant has equity value in the six unit apartment building").

Konrad has not demonstrated he is unable to liquidate or leverage the value of his IRAs, or that doing so would work an extreme hardship. Furthermore, an IRA is more liquid than real property, and is easily converted to cash, like any other investment portfolio. IRA funds may be withdrawn at will, subject to an early withdrawal penalty.

We recognize that early withdrawal of funds from an IRA incurs a 10% penalty, in addition to normal income

9

taxes,[6] which is a significant transaction cost. 26 U.S.C. § 72(q). But even with the 10% penalty, Konrad would retain $63,863 in his retirement savings account. Konrad has not demonstrated that a $6,000[7] reduction in his retirement savings account would work an extreme hardship. Since Konrad may easily reduce his IRA assets to cash and has not shown liquidation would work an extreme hardship, the District Court did not abuse its discretion in finding these funds were available to Konrad for his legal defense.

**2.**

Konrad has $6,007 in an individually held checking account and a CD, and $34,893 in a money market account jointly held with his wife. Funds may be available for CJA purposes when a defendant is in control of the funds. *See, e.g.*, *Fullan*, 891 F.2d at 1011 (finding if the defendant "had discretionary use of the funds raised by his family and friends or had control of them," under the CJA he would be "'in no different a position than the defendant who has $10,000 of his own money to spend on appeal'"); *Bracewell*, 569 F.2d at 1200 ("If monies paid on a defendant's behalf actually belong to a third party, then they are not 'available for payment.'"); *Lexin*, 434 F. Supp. 2d at 843 ("[T]he Court concludes that to the extent any asset is jointly held and individually disposable

---

[6] As noted, at the time of retirement, IRA withdrawals are taxed as income. Early withdrawals are also subject to the same income taxes as the withdrawals intended under the program. 26 U.S.C. § 72(q).

[7] We recognize that, with the early withdrawal penalty, Konrad might have a $6,600 reduction in his retirement savings account.

10

by either spouse without advance consent, then that spouse has sufficient supervision or control over that asset so that it is appropriately considered during the [CJA] evaluation process.").

The Guide directs that "eligibility should be made without regard to the financial ability of the person's family unless the family indicates willingness and financial ability to retain counsel promptly." 7A *Guide to Judiciary Policy* § 210.40.50. The CJA prescribes an "appropriate inquiry" which often necessitates a holistic review of a person's financial position. *Id.* at § 210.40.30(d) (counseling courts to consider "all . . . available data bearing on the person's financial condition"); *cf. United States v. Parker*, 439 F.3d 81, 96 (2d Cir. 2006) ("Courts have utilized a broad range of considerations in conducting an 'appropriate inquiry' into financial eligibility under 18 U.S.C. § 3006A."); *United States v. O'Neil*, 118 F.3d 65, 74 (2d Cir. 1997) (considering anticipated income from a business venture). The CJA Form 23 Financial Affidavit requires information about the defendant's spouse's earnings and their dependents, in addition to information about their assets, debts and expenses. Although the Guide says spouses are not required to contribute to counsel fees unless they offer to do so,[8] 7A

---

[8] Several courts have considered a spouse's income in determining defendant's ability to pay. *See, e.g.*, *United States v. Barcelon*, 833 F.2d 894, 897 n.5 (10th Cir. 1987) ("Other factors which courts have considered include. . . the availability of income to the defendant from other sources such as a spouse."); *United States v. Caudle*, 758 F.2d 994, 996 (4th Cir. 1985) ("Talbert's affidavit revealed that he earned $1000 per month as a truck driver and that his wife earned $450 per

*Guide to Judiciary Policy* § 210.40.50, jointly held property has been considered when determining a defendant's ability to pay. *See, e.g.*, *Fincher*, 593 F.3d at 707 (considering the property of the defendant and his wife), *United States v. Brockman*, 183 F.3d 891, 898 (8th Cir. 1999) (considering funds under a joint venture agreement as available assets); *United States v. Liebler*, No. 10CR313S, 2012 WL 6087791, at *1 (W.D.N.Y. Dec. 6, 2012) (finding the defendant could pay for legal costs from a bank account jointly held with his father); *Lexin*, 434 F. Supp. 2d at 843 (finding the defendant's bank account jointly held with his wife available to pay for his legal counsel).

Funds are available when the defendant has control over their disposal. *Fullan*, 891 F.2d at 1011. The court in *Fullan* distinguished between "assets belonging to [the defendant's] family and friends" and "assets owned or controlled by the defendant." *Id.* Fullan's application for leave to appeal *in forma pauperis* was initially denied because Fullan's family and friends raised $10,000 to pay for an appellate attorney. *Id.* at 1008. The Second Circuit reversed because Fullan did not have "discretionary use of the funds raised by his family and friends or [] control of them." *Id.* at 1011. "Indeed, if Fullan . . . had discretionary use . . . or . . . control . . . , we would agree with the district court that he was 'in no different a position than the defendant who has $10,000 of his own money to spend on appeal.'" *Id.*; s*ee also*

month."); *United States v. Salemme*, 985 F. Supp. 197, 201-02 (D. Mass. 1997) ("In determining whether a defendant is financially unable to retain counsel, the court may consider whether he has income or assets available to him from other sources, including his spouse.").

12

*United States v. Zelenka*, 112 F. Supp. 2d 708, 715 (M.D. Tenn. 1999) ("This is not a case where Defendant has received assets or income from the third party payers in the form of a gift so that Defendant is free to control how and whether the assets will be spent on his defense. Rather, the assets are solely in the control of a third party who may withdraw the funds or alter the way in which they are spent at any time.").

The District Court here found Konrad "does own and control, at least partly, the assets in the joint bank accounts." *Konrad*, 2011 WL 6739464, at \*4. This reasoning is sound since a purpose of a joint account is to permit the co-signer to freely withdraw funds without additional consent. At oral argument, Konrad's counsel conceded that Konrad has the "right to . . . write a check from the account . . . and take money out for himself." Oral Argument at 15:17, Apr. 2, 2013. Access to jointly held assets for CJA purposes should be distinguished from the debtor/creditor context where third parties seek to seize the debtor's funds. The CJA analysis is designed to determine ability to pay future legal costs, rather than payment of an accrued debt.

Konrad has authority to dispense funds from the joint checking account at his discretion. These funds are not held in a spouse's individual bank account, and Konrad can freely withdraw from the joint account. As the Second Circuit explained, this discretionary use and control places Konrad in the same position as a defendant who has his own money to spend on counsel. *Fullan*, 891 F.2d at 1011. Accordingly, the funds in the joint account can be available to pay the cost of Konrad's legal counsel.

13

Konrad has access to a sizable joint checking account, as well as a more modest individual account. The checking accounts have several times the amount of money Konrad is ordered to pay. Konrad also owns IRAs worth more than ten times the amount Konrad was ordered to pay, and these accounts may be liquidated for cash at any time. Konrad has no minor children in his household, and the presentencing report shows Konrad's household income exceeds his household expenses. Accordingly, Konrad has sufficient funds available to pay for legal counsel and still meet the cost of the necessities of life. The District Court did not abuse its discretion in ordering reimbursement.

## C.

The District Court ordered Konrad to pay the cost of a private defense attorney, and appointed a Master to determine that cost. The CJA provides for reimbursement

> [w]henever . . . the court finds that funds are available for payment from or on behalf of a person furnished representation, [in which case] it may authorize or direct that such funds be paid . . . to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

18 U.S.C. § 3006A(f). "Reimburse" means to pay back. It is ambiguous whether the statute means to pay back the value received in legal services or to pay back the cost expended on the legal defense. "Appropriation" has many meanings. One meaning is the fund or sub-fund appropriated by Congress for

14

court-appointed attorneys representing those who cannot afford legal counsel.[9] We read "reimbursement to the appropriation" to mean repayment to the institution that expended funds for representation in the amount of the benefit to the ineligible defendant.

Konrad contends he should only have to pay the $125 hourly rate paid to court-appointed counsel, not the hourly rate of a private attorney.[10] But Konrad does not contend that the $125 hourly rate for court-appointed private attorneys has any relation to the cost to the government for representation by the Federal Public Defenders. Although the CJA rate is the amount private court-appointed attorneys are compensated, the CJA figure is universally recognized as a below-market rate for criminal defense lawyers. The CJA rate does not reflect the costs to private criminal defense attorneys, nor the

---

[9] The Guide provides:

> When the court determines that a person who received representation under the CJA was financially ineligible for those services at the time they were rendered, and directs that person reimburse the government, the payment should be made by check or money order to the clerk of court for deposit in the Treasury. Such funds will be credited to the Defender Services Appropriation.

7A *Guide to Judiciary Policy* § 230.40.

[10] Private court-appointed attorneys are compensated at $125 per hour, with some exceptions. *Id.* § 3006A(d); 7A *Guide to Judiciary Policy* § 230.16. In contrast, Federal Public Defenders are paid a salary independent of the CJA rate paid to court-appointed counsel. 18 U.S.C. § 3006A(g)(2)(A).

cost to the government for providing a legal defense through the Federal Public Defenders. Even if we read "reimburse" to mean pay back the costs expended for Konrad's legal defense, there is no indication that the CJA rate has any relationship to the cost to the Federal Public Defenders.[11] Reimbursement more properly refers to the money that Konrad would have paid to a private attorney had he accurately completed the financial disclosure affidavit, rather than falsifying his financial information. Konrad was not entitled to a Federal Public Defender, so he should not be limited to the CJA reimbursement rate.

When a defendant is able to pay for the costs of a private attorney, he is not entitled to gratuitous or subsidized legal counsel under the CJA. *Wilson*, 597 F.3d at 357 ("What the Act gives with one hand to a criminal defendant 'financially unable' to pay for legal services it takes away with the other if the defendant turns out to be 'financially able' to obtain counsel."); *United States v. Coniam*, 574 F. Supp. 615, 618 (D. Conn. 1983) (finding defendant would benefit from "gratuitous or subsidized counsel … if his reimbursement were limited to a level below the cost of his representation"). Ordering reimbursement at a lower rate than the cost of private representation would be contrary to the statute by subsidizing the cost of counsel to a defendant who is able to pay. *Coniam*, 574 F. Supp. at 618 ("Nothing in the act provides nor manifests a congressional intention to subsidize a defendant who is clearly able to pay out of earned income.").

---

[11] Even if one could measure the proper cost to a public defender, it would appear that this would vary from office to office depending on the number of public defenders, fixed costs of the facility, etc.

16

Moreover, Konrad should not benefit from his incomplete, undervalued or untruthful financial disclosures by receiving legal services at a fraction of the cost.

Other courts have not limited reimbursement to the court-appointed counsel CJA rates. *See, e.g.*, *United States v. Anderson*, 400 F. Supp. 2d 32, 37 (D.D.C. 2005) (ordering reimbursement for "the time expended in this case at a reasonable hourly rate (not limited to $90 per hour)"); *United States v. Nunez-Garcia*, 879 F. Supp. 63, 67 (W.D. Tex. 1995) (finding the court "is not limited by the hourly rates stated in § 3006A(d)(1)"); *Coniam*, 574 F. Supp. at 618 ("There is no explicit limit on the amount of such funds to the panel attorney rates . . . ."); *cf. Lefkowitz*, 125 F.3d at 621 (ordering defendant to reimburse $316,693.70, greatly exceeding the maximum under 18 U.S.C. § 3006A(d)(2)).

When civil defendants pay attorney's fees under fee-shifting statutes, they do not pay the hourly rate earned by a plaintiff's public interest attorney, but instead pay a reasonable market rate for a private attorney in the area. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). This is how the Master here calculated the cost of Konrad's legal defense. The Master selected the lowest estimate submitted by private attorneys.[12] Accordingly, the District Court did not err in ordering Konrad to pay the $6,000 cost of private legal representation.

---

[12] Defendant's contention the Master had a conflict of interest because she was compensated from the recommended reimbursement is unfounded. The Master was paid the standard hourly rate, and not a percentage of the sum she calculated.

17

## III.

We will affirm the District Court's order that Konrad pay $6,000 for the cost of his legal representation.

FUENTES, *Circuit Judge*, concurring in part and dissenting in part.

I agree with the Majority's holding that "individual retirement funds and jointly-held bank accounts can be available funds within the meaning of the Criminal Justice Act." Majority typescript at 1. Because the Defendant, Joseph Konrad, failed to disclose all of his "available funds" before being appointed a Federal Defender, the District Court properly ordered him to reimburse the Government. My disagreement with the Majority concerns what constitutes "reimbursement" under § 3006A(f) of the Criminal Justice Act ("CJA"). The "reimbursement provision" of the CJA provides, in pertinent part:

> Whenever . . . the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid . . . to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

18 U.S.C. § 3006A(f).

The District Court considered the following three methods for determining the amount of reimbursement owed by Konrad under § 3006A(f): (1) using the hourly rate for court-appointed CJA attorneys in the Eastern District of Pennsylvania; (2) structuring an hourly rate for the Federal Defenders, who are salaried; and (3) calculating the market value of the legal services Konrad received. *United States v.*

1

*Konrad*, Criminal Action No. 11-15, 2011 WL 6739464, at \*7 (E.D. Pa. Dec. 21, 2011). Ultimately it employed the third method and ordered Konrad to reimburse the Clerk of Court in an amount equal to what it would have cost him to hire a private defense attorney. The District Court reasoned that "[c]hoosing the CJA rate or structuring an hourly rate for the federal defender's services would not be an adequate measure of the benefit that the Defendant received." *Id.*

On appeal we have been asked to determine whether the methodology chosen by the District Court to calculate the reimbursement amount was proper. This requires us to answer an antecedent question of law: what does the term "reimbursement to the appropriation" mean in the context of § 3006A of the CJA? The Majority Opinion affirms the District Court, concluding that it "did not err in ordering Konrad to pay the $6,000 cost of private legal representation."[1] Majority typescript at 14. However, I agree with Konrad that the reimbursement determination should have been based on the amount of money it actually cost the Federal Defender to represent him.

In cases of statutory interpretation "we begin by looking at the terms of the provisions [at issue] and the commonsense conception of those terms." *Carachuri-*

---

[1] While it is true that we review a district court's fixing of compensation and reimbursement under the CJA for abuse of discretion, *see United States v. Parker*, 439 F.3d 81, 99 (2d Cir. 2006), we exercise plenary review over a district court's interpretation of the terms of the statute, *see United States v. Williams*, 675 F.3d 274, 277 (3d Cir. 2012). Because this question involves a matter of statutory interpretation, our standard of review is plenary.

2

*Rosendo v. Holder*, 130 S. Ct. 2577, 2585 (2010) (internal quotation marks omitted). As the Supreme Court has emphasized, in "all" cases "[t]he inquiry ceases if the statutory language is unambiguous." *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002) (internal quotation marks omitted). Thus, we turn first to the text of the reimbursement provision itself, which again provides that:

> Whenever . . . the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid . . . to the court for deposit in the Treasury as a *reimbursement to the appropriation*, current at the time of payment, to carry out the provisions of this section.

18 U.S.C. § 3006A(f) (emphasis added).

We have previously stated that the "plain and ordinary meaning" of the term reimburse is "'[t]o pay back, to make restoration, to repay that expended; to indemnify, or make whole.'" *Liberty Lincoln-Mercury v. Ford Motor Co.*, 134 F.3d 557, 566 (3d Cir. 1998) (quoting *Black's Law Dictionary* 1287 (6th ed.1990)); *see also Reimburse Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/reimburse (last visited July 24, 2013) (defining "reimburse" as "to pay back to someone: repay," or "to make restoration or payment of an equivalent to"). Moreover, the word "appropriation" is defined as "money set aside by formal action for a specific use." *Appropriation Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/appropriation (last visited July 24,

2013). Thus, § 3006A(f)'s edict that a court may order "payment from or on behalf of a person furnished representation . . . as a reimbursement to the appropriation" plainly means that a court may order a defendant to repay the money that has been expended or set aside by the Government to pay for his representation.

The problem with the "benefit" approach taken by the District Court is that it has no relation to the amount that it actually cost the Government to represent Konrad, which is the only thing that the reimbursement provision contemplates. The District Court ordered that Konrad pay $6,000 to the Clerk of Court, to be credited to the Defender Services appropriation. *See* App. 8; 7A *Guide to Judiciary Policy* § 230.40(c). However, the Federal Defender argues that its representation of Konrad cost, at most, $1,875. Appellant Br. at 23. In effect, the District Court ordered Konrad to "reimburse" the Government for costs it never incurred. Having the Government profit from a court's reimbursement order is antithetical to the very concept of reimbursement.

I understand the Majority's policy concern that limiting the amount of reimbursement to what was actually expended on Konrad's behalf would allow Konrad to "benefit from his incomplete, undervalued or untruthful financial disclosures by receiving legal services at a fraction of the cost." Majority typescript at 13. However, individuals who knowingly provide false or incomplete information on a sworn financial affidavit may be charged with perjury, a felony punished by up to five years in prison. *See*, *United States v. Page*, Nos. 10-CR-30053-04-MJR, 10-30136-MJR, 2011 WL 2224674 (S.D. Ill. June 8, 2011); 18 U.S.C. § 1621. I doubt that the desire for subsidized legal costs will drive

4

those with the means to pay for private counsel to risk a conviction and prison time for a randomly assigned public defender.

Furthermore, a number of district courts faced with this issue have ordered reimbursement in an amount meant to approximate what it actually cost the Government to represent the defendant. *See United States v. Stevenson*, Criminal No. 10-120, 2012 WL 1038832, at *4 (W.D. Pa. Mar. 28, 2012) (ordering defendant represented by Federal Defenders to reimburse the clerk of court in an amount equal to "the costs of his representation by the Federal Public Defender's Office"); *Page*, 2011 WL 2224674 (ordering defendant represented by CJA-appointed attorney to reimburse the clerk of court the amount that "was expended from the Treasury for CJA representation"); *United States v. Bedoya*, No. 89 CR. 803 (JMC), 1990 WL 194934, at *4 (S.D.N.Y. Nov. 28, 1990) (ordering defendant represented by CJA-appointed attorney to reimburse the clerk of court in an amount equal to the "costs of legal fees expended for his defense under the [CJA]"). Accordingly, I would remand the case to the District Court with instructions to reduce the amount of reimbursement to an amount approximate to what it cost the Federal Defenders to represent Konrad in this case.[2]

---

[2] We would review the District Court's calculation of this amount for an abuse of discretion. I note that, while the Majority is correct to point out that the CJA rate is not an accurate accounting of the Federal Defenders representation costs (as the Federal Defenders receive a salary), district courts have used the CJA rate as an approximation for the cost of the Federal Defender. *See, e.g.*, *United States v.*

5

*Meyer*, No. CR-13-777-PHX-ROS, 2013 WL 3353771, at *4 (D. Ariz. July 3, 2013) (ordering defendant represented by Federal Defender to reimburse clerk of court "at the current CJA hourly rate times the number of hours plus the costs of defense").