**UNITED STATES of America,**

v.

**Joseph JENKINS, Defendant.**

**No. 14–CR–0088 EAW.**

United States District Court,
N.D. New York.

Signed Sept. 17, 2015.

Tamara Thomson, Office of United States Attorney, Syracuse, NY, for United States of America.

Joseph Jenkins, Owego, NY, Randi Juda Bianco, Office of the Federal Public Defender, Syracuse, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD *, District Judge.

### INTRODUCTION

*Pro se* defendant Joseph Jenkins ("Defendant") seeks appointment of counsel to assist with his sentencing in the above matter, or alternatively he requests that sentencing be indefinitely suspended until he exhausts his legal remedies in other civil and criminal matters. For the reasons discussed in detail below, the Court determines that Defendant has not established that he is financially eligible for appointment of counsel, and therefore denies Defendant's request for appointment of counsel. In addition, the Court declines to continue the sentencing in this case while Defendant pursues unrelated legal remedies.

### BACKGROUND

On April 1, 2015, following a three-day trial, a jury convicted Defendant of perjury in violation of 18 U.S.C. § 1621(2), for false statements contained in a Criminal Justice Act Form 23 ("CJA 23 Form"). (Dkt. 68). The CJA 23 Form had been completed in connection with Defendant's request for counsel in a prosecution against him in this Court for the transportation and possession of child pornography (Case No. 11–cr–00602–GTS–1).

The Court set a sentencing date of August 12, 2015. (Dkt. 73). In an undated letter that was received by the Court on June 25, 2015, Defendant requested that the Court appoint "an attorney (competent)" to represent him for sentencing and delay sentencing until a garnishment proceeding against Defendant was resolved. (Dkt. 76). The Court set a hearing for July 24, 2015, to address Defendant's requests. (Dkt. 77).

On July 22, 2015, Defendant reported through his stand-by counsel, Randi Bianco, Assistant Federal Public Defender, that he was medically unable to go forward with the hearing scheduled for July 24, 2015. (Dkt. 80). As a result, the Court adjourned without date the sentencing and rescheduled the hearing concerning appointment of counsel to August 12, 2015. (*Id.*).

On August 12, 2015, the Court discussed at length Defendant's request for counsel and his financial eligibility, and conducted an *in camera* hearing outside the presence of the Government to discuss these issues.[1] Defendant explained that he is seeking assigned counsel from the Court for sentencing but will not complete a CJA 23 Form based on Fifth Amendment concerns. In addition, Defendant indicated that he would refuse the appointment of counsel from the panel of attorneys maintained by the Court pursuant to the Criminal Justice Act of 1964, and he similarly told the Court that he would not accept appointment of his current standby counsel, Ms. Bianco.[2] Instead, Defendant wishes to be represented by an attorney of

---

* The Honorable Elizabeth A. Wolford, United States District Judge for the Western District of New York, has been designated to sit on this case by Order of the United States Court of Appeals for the Second Circuit. (Dkt. 20).

1. The information disclosed as part of this Decision and Order was discussed in the presence of the Government.

2. Defendant has a long history of discharging his attorneys and refusing appointment of counsel from the CJA panel. For example, in this case, Defendant's retained attorney made a motion to withdraw shortly after the initial appearance (Dkt. 5); Ms. Bianco of the Federal Public Defender's office was appointed to represent Defendant (Dkt. 11), but then Ms. Bianco filed a motion to withdraw (Dkt. 24); thereafter, Defendant elected to proceed *pro se* but agreed to have Ms. Bianco serve as stand-by counsel (Dkt. 30).

his choosing located in New York City, who is apparently handling Defendant's appeal of his convictions for transportation and possession of child pornography.

Defendant also contended that he cannot afford to retain counsel because his assets are currently subject to a garnishment proceeding, thus alternatively requesting that the sentencing be delayed pending the resolution of the garnishment proceeding. Specifically, the Government applied for a writ of garnishment under 28 U.S.C. § 3205(b)(1), against Defendant's assets at Ameriprise Financial Services, Inc. ("Ameriprise"), to satisfy the balance due of $52,200.00 owed on the criminal judgment entered in connection with the child pornography convictions (Case No. 15-cv–0018–GTS–TWD). On February 12, 2015, Ameriprise produced documentation noting that Defendant had two accounts—an Ameriprise Brokerage account and an Ameriprise One account—with a total value of $57,000.76, which would satisfy Defendant's debt. (*See* Case No. 15–cv–00018–GTS–TWD, Dkt. 8).[3] Defendant objected to the writ of garnishment, and on June 4, 2015, United States Magistrate Judge Dancks issued a Report and Recommendation that Defendant's objections be overruled. (Case No. 15–cv–00018–GTS–TWD, Dkt. 13). On August 25, 2015, United States District Judge Suddaby accepted and adopted the Report and Recommendation in its entirety. (*See* Case No. 15–cv–00018–GTS–TWD, Dkt. 15). Defendant has subsequently filed a notice of appeal

seeking review of that decision. (Case No. 15–cv–0018–GTS–TWD, Dkt. 18).

Although two of Defendant's accounts held with Ameriprise are restrained by the garnishment proceeding, Defendant holds two other accounts with Ameriprise that are not subject to the garnishment proceeding, including a RiverSource Life of NY Annuity ("RiverSource Account") that had an account value of $94,383.26 as of March 19, 2015, and a SEP–IRA account that had an account value of $3,608.28 as of March 19, 2015.[4] In addition, Mary Halvorson, a representative of Ameriprise, testified at Defendant's jury trial concerning the account values held at Ameriprise, including the RiverSource Account. According to Ms. Halvorson, the "Value If Surrendered" amount in the account statements (admitted at trial as Government Exhibits 6A and 6B) refers to the moneys that Defendant would receive if he cashed out the RiverSource Account. Thus, for example, according to Ms. Halvorson, as reflected at Bates page 140 of Government Exhibit 6A, the total value of the RiverSource Account as of December 30, 2011, was $92,121.83, but there would be a $3,937.55 charge if that account was surrendered, so that the amount that Defendant would actually receive if he cashed out the account as of December 30, 2011, was $88,184.28. In other words, the fees or penalties that Ameriprise would charge Mr. Jenkins for cashing out the RiverSource Account appear to be relatively minimal.[5]

---

**3.** On March 4, 2013, Defendant was ordered to pay the CJA fund the amount of $8,049.12 as reimbursement for legal services received by Defendant for which he was not financially eligible. (*See* Case No. 11–cr–00602–GTS–1, Dkt. 54). These fees remain outstanding. (Case No. 11–cr–00602–GTS–1, Dkt. 79 at 16–17).

**4.** Information concerning the value of these accounts as of March 2015, was provided to the Court and the parties by the United States

Probation Office at the hearing held on August 12, 2015.

**5.** Although Defendant has stated in a generic and conclusory fashion that the moneys held by Ameriprise are "retirement accounts" and therefore he would have to pay taxes on any withdrawn moneys, the Court is not aware of any proof in the record that the moneys invested in the RiverSource Account are, in fact, pre-tax dollars.

Defendant does not dispute the existence of these accounts with Ameriprise, but argues that he should not have to utilize the money contained in these accounts because he would have to pay taxes and penalties to withdraw the money. Defendant has refused to provide additional information concerning these accounts or sign releases authorizing the disclosure of financial information about these accounts from Ameriprise.

On August 12, 2015, the Court reserved decision on Defendant's request for counsel, allowing both parties an opportunity to make further submissions regarding the issue. Thereafter, Defendant filed a letter requesting that this proceeding be stayed pending his appeal of the child pornography convictions. (Dkt. 81). The Government filed a response in opposition on August 26, 2015. (Dkt. 83).

## DISCUSSION

### I. APPOINTMENT OF COUNSEL

■ Defendant has a Sixth Amendment right to counsel at the sentencing stage of this proceeding. "[S]entencing is a critical stage of the criminal proceeding at which [the defendant] is entitled to the effective assistance of counsel." *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *see United States v. Tribote*, 297 F.2d 598, 602 (2d Cir.1961) (district court erred when defendant was sentenced without the presence of counsel and defendant was not advised of his right to counsel or possibility of assignment of counsel); *Perez v. Greiner*, No. 01 CIV. 5522(AKH), 2002 WL 31132872, at *7 (S.D.N.Y. Sept. 25, 2002) ("The Sixth Amendment guarantees criminal defendants the right to representation by a competent attorney, a right that continues through every stage of a criminal proceeding, even after a defendant is convicted and before he is sentenced.").

■ Defendant claims that he is unable to pay for an attorney and requests assignment of counsel for his sentencing proceeding. The Criminal Justice Act permits district courts to appoint publicly financed counsel for "any person financially unable to obtain adequate representation." 18 U.S.C. § 3006A(a). "This standard means something less than indigency or destitution." *United States v. Harris*, 707 F.2d 653, 660 (2d Cir.1983).

■ "'In many cases, the court's inquiry may properly be limited to review of financial information supplied on the standard form financial affidavit.'" *United States v. Parker*, 439 F.3d 81, 93 (2d Cir. 2006) (quoting *United States v. Gravatt*, 868 F.2d 585, 589 (3d Cir.1989)). However, "conditioning the assignment of court-appointed attorneys on the execution of financial affidavits has been found to be improper." *United States v. Auen*, 846 F.2d 872, 879 (2d Cir.1988). The CJA 23 Form "is not a required statutory form. It is an administrative tool used to assist the court in appointing counsel." *United States v. Moore*, 671 F.2d 139, 141 (5th Cir.1982) ("The defendant was prejudiced in the prior trial by the mere fact that the district court refused to appoint counsel without making adequate inquiry into the need to appoint counsel, since the court improperly demanded that the defendant fill out a CJA Form 23 before the court would further consider the appointment of counsel."). "When, as here, a defendant asserts a colorable claim that disclosure to the government of a completed CJA 23 would be self-incriminating, the court may not adopt an unconditional requirement that the defendant complete the CJA 23 before his application for appointment of counsel will be considered." *Gravatt*, 868 F.2d at 589.

■ In the present case, in light of the nature of the underlying conviction for

perjury based upon Defendant's falsification of his assets and financial information on the CJA 23 Form, the Court agreed with Defendant that he should not be required to complete a financial affidavit in connection with his request for counsel at sentencing. Instead, the Court held an *in camera* hearing to permit Defendant to disclose his financial circumstances without completing a CJA 23 Form. Yet, other than claiming in a conclusory fashion that he lacks assets and he does not want to withdraw funds from the Ameriprise accounts because of the financial penalties and taxes he would have to pay, Defendant has failed to present the Court, either *in camera* or otherwise, with information supporting his financial eligibility for counsel.

■ "When requesting the appointment of counsel, the burden is on the defendant to show that he is unable to afford representation...." *United States v. O'Neil*, 118 F.3d 65, 74 (2d Cir.1997). "[A] defendant's failure to submit a financial affidavit or otherwise furnish evidence of his eligibility [does not] relieve a district court of its responsibility to inquire into the defendant's financial status." *United States v. Barton*, 712 F.3d 111, 116–17 (2d Cir.2013). Here, Defendant claims that his only remaining assets are his Ameriprise retirement accounts (the RiverSource Account and the SEP–IRA account) totaling approximately $100,000, but he has indicated he is not willing to pay the unspecified penalties and taxes that would be associated with withdrawing that money.

■ "In determining whether a defendant is financially unable to afford counsel, courts generally attempt to consider the economic realities facing the defendant, i.e., the realistic costs of defense and the financial needs of the defendant and his family." *United States v. Knott*, 142 F.Supp.2d 468, 469 (S.D.N.Y.2001); *see also United States v. Barcelon*, 833 F.2d 894, 897, n. 5 (10th Cir.1987) (laying out various factors for courts to consider). In conducting this analysis, the district judge "should be satisfied that 'the defendant will not suffer extreme hardship.'" *Parker*, 439 F.3d at 93 (quoting *United States v. Bracewell*, 569 F.2d 1194, 1199 (2d Cir. 1978)).

Here, the Court lacks some information concerning the contractual nature of the accounts that Defendant still maintains with Ameriprise because Defendant has refused to provide any information concerning the accounts. For example, retirement accounts often allow for borrowing under certain circumstances, and yet, without further information about the details of Defendant's arrangement with Ameriprise, the Court is not able to ascertain whether Defendant can borrow funds from any of the accounts (and thus avoid the imposition of penalties and taxes).

Nonetheless, based upon the information that is available to the Court as a result of the trial and disclosures from the United States Probation Office, it is apparent that the accounts total approximately $100,000, and with respect to the RiverSource Account which contains the vast amount of the money, the financial penalty that would be assessed for the withdrawal of this money is only a few thousand dollars. Moreover, even assuming that that the moneys comprising the RiverSource Account are pre-tax dollars, the fact that Defendant would have to pay income taxes on any withdrawn moneys, standing alone, cannot justify a conclusion that it would be an undue hardship for Defendant to use these funds to retain counsel. Indeed, if the funds invested in the account are pre-tax dollars, then Defendant has never paid any income taxes on the moneys.

The case law addressing the issue of the appropriateness of considering retirement accounts in connection with a defendant's

financial eligibility for appointment of counsel is relatively limited. However, most courts addressing the issue support the notion that it is appropriate to consider retirement accounts. In *United States v. Konrad*, 730 F.3d 343 (3d Cir.2013), the Third Circuit Court of Appeals held that individual retirement funds can be available funds within the meaning of the Criminal Justice Act. The court agreed with the district court that the defendant's two individual retirement accounts with a balance of $70,463 rendered him financially able to pay the cost of legal representation. *Id.* at 345. As explained by the court, these retirement funds were not future income "because they are an accumulation of past earnings paid into the account and accrued investment income. Only taxation on those earnings is deferred." *Id.* at 347. While acknowledging that the defendant would have to pay an early withdrawal penalty of 10%, in addition to normal income taxes, the court concluded that those financial penalties did not rise to the level of an "extreme hardship" under the circumstances of the case.

Similarly, in *United States v. Pani*, No. 08–40034–FDS, 2011 WL 4344336, at *3 (D.Mass. Aug. 3, 2011), the court concluded that it was appropriate to consider funds held in an IRA account when determining financial eligibility for assignment of counsel. As explained by the court, the moneys held in an IRA are not future income, but rather earned moneys "with taxation a question of timing only...." *Id.* at *2. Although the Court recognized that the moneys withdrawn from the IRA would be subject "both to ordinary income tax and an early withdrawal penalty of ten percent," the net amount remaining to the defendant was still considered significant and sufficient to retain counsel. *See also United States v. Meyer*, No. CR–13–777–PHX–ROS (LOA), 2013 WL 3353771, at *3–4 (D.Ariz. July 3, 2013) (court considered moneys held by defendant in Thrift

Savings Plan earned during employment with U.S. Postal Service in assessing financial ability to repay fees for court-appointed counsel); *In the Matter of the Extradition of Patel*, No. 08–MJ–430, 2008 WL 896069, at *2–3 (D.Or. Mar. 29, 2008) (court considered moneys held by defendant in IRA in assessing financial eligibility for court-appointed counsel, even though defendant would have to pay penalties and taxes). *But see United States v. Lexin*, 434 F.Supp.2d 836, 844–45 (S.D.Cal. 2006) (defendant's retirement accounts not included in the determination of eligibility for assigned counsel, but court declined to decide at that time whether the defendant was capable of borrowing funds from his retirement accounts to pay for, or contribute to, his legal expenses).

Here, Defendant's RiverSource Account is valued at over $90,000 and the surrender value is similarly an amount close to $90,000. Even assuming that the moneys in this account are pre-tax dollars, and that Defendant would have to pay income taxes on any withdrawn funds, the moneys are plainly available to Defendant and more than sufficient to retain counsel for this sentencing proceeding. Indeed, the anticipated attorneys' fees associated with sentencing in this case would be relatively limited. The trial lasted only three days, the indictment consisted of just one count, and the issues related to sentencing are not substantial.

Defendant's failure to demonstrate his eligibility for appointed counsel is only further buttressed by Defendant's refusal to provide information to the Court concerning the Ameriprise accounts, instead simply claiming in a conclusory fashion that he does not want to withdraw the moneys because of unspecified fees and taxes. In fact, Defendant contends that even if the Court were to determine that he was financially eligible for appointment of counsel, he would refuse to have a "Syracuse

lawyer" appointed to represent him. *See Green v. Abrams*, 984 F.2d 41, 47 (2d Cir.1993) ("[A]n indigent defendant has no right to choose the particular counsel appointed to represent her.").

Particularly in view of the history of this case, with Defendant standing convicted of falsifying information concerning his eligibility for counsel, the Court must give due consideration to the public policy implications related to assigned counsel. "CJA funds are a necessarily limited resource" and the public has a " 'strong interest in how its funds are being spent in the administration of criminal justice.' " *Parker*, 439 F.3d at 109.

■ In sum, based on the foregoing, the Court denies Defendant's request for appointment of counsel because Defendant is not financially eligible under 18 U.S.C. § 3006A(a).[6]

## II. MOTION TO STAY PROCEEDINGS

■ Federal Rule of Criminal Procedure 32 provides that the Court "must impose sentence without unnecessary delay." Fed.R.Crim.P. 32(b)(1). "The history of Rule 32 demonstrates that the Rules set forth no rigid timeline for sentencing. Rather, the decision of when to impose sentence is in the sound discretion of the trial court." *United States v. Flowers*, 983 F.Supp. 159, 170 (E.D.N.Y.1997).

■ A district court's denial of a sentencing postponement is reviewed for abuse of discretion. *United States v. Doe*, 239 F.3d 473, 475 (2d Cir.2001). "A sentencing court has broad discretion respecting the scheduling of sentencing proceedings. Absent a showing both that the denial was arbitrary and that it substantially impaired the defendant's opportunity to secure a fair sentence," a sentence will not be vacated on appeal because a continuance was denied. *Id.* (quotation omitted).

■ Here, Defendant asks the Court to delay sentencing indefinitely until his appeals pertaining to the garnishment proceeding and child pornography convictions are resolved. Requests to stay or continue sentencing until the occurrence of some future event often arise in cases where there is pending legislation that may have an impact on the sentence a defendant receives. Under those circumstances, courts regularly deny the request when the basis for the request is speculative. *See United States v. Williams*, No. 14–13670, 618 Fed.Appx. 541, 543, 2015 WL 4113639, at *1 (11th Cir. July 9, 2015) ("The district court did not abuse its discretion by failing to delay Williams's sentencing hearing ... Williams failed to show that he suffered specific substantial prejudice from the court's denials of his motions to continue sentencing because the evidence suggests that both pieces of legislation ... remain pending."); *United States v. McClendon*, 379 Fed.Appx. 898, 900 (11th Cir.2010) ("The legislation altering the sentencing scheme for crack cocaine offenses is still pending, and McClendon's contention that the pending legislation *may* affect the sentence the

---

**6.** In addition to the Ameriprise accounts, Defendant may also have some real property assets. Defendant's parents revealed in a June 2015 interview with the United States Probation Office that they were using Defendant's assets to pay the taxes and other costs associated with their Geneva house and property, which is held in the name of the "Jenkins Living Trust." (Dkt. 79 at ¶ 52). Arguably, Defendant may have some equity in that house in addition to his Ameriprise assets. However, "[a] joint interest in a valuable equity in a family residence does not necessarily negate indigence for purposes of an accused's Sixth Amendment right to counsel." *Barry v. Brower*, 864 F.2d 294, 300 (3d Cir.1988). The Court need not address this issue in light of the availability of funds held in Defendant's Ameriprise accounts.

court imposed is not enough to meet his burden.") (emphasis in original); *United States v. Fuller*, 993 F.Supp.2d 1014, 1017 (D.Neb.2014) ("It would not be appropriate, much less necessary, for the Court to delay sentencing indefinitely because of the chance that Congress *may* pass and the President *may* sign into legislation at some unknown point in the future that turned out to be beneficial to the [defendant].") (emphasis in original) (quotation omitted); *United States v. Omar*, No. 1:08–CR–00046, 2009 WL 3126499, at *4 (S.D.Ohio Sept. 24, 2009) ("The Court cannot continue sentencing every time a whiff of legislation could touch upon a defendant's circumstances appears. Defendant's concerns, while legitimate, are more appropriately lodged with Congress, not this Court.").

Here, there is no logical basis to conclude that the resolution of Defendant's appeals pertaining to the garnishment proceeding and child pornography convictions will impact the sentencing in this case. As discussed in detail above, the Government has only attached two of the four Ameriprise accounts, and Defendant has access to sufficient assets remaining in the RiverSource Account that he could use to pay for an attorney of his choosing. Thus, the pendency of an appeal related to an entirely separate garnishment proceeding does not justify a stay of sentencing for Defendant's perjury conviction.

As for Defendant's request to stay this matter pending resolution of his appeal of the child pornography convictions, as the Government notes, an appellate reversal of Defendant's convictions for distribution and possession of child pornography would have no impact on the instant perjury matter. *Cf. United States v. Jiminez*, 956 F.2d 1168, 1168 (9th Cir.1992) ("Here, the district court delayed sentencing during Jiminez's prosecution on another charge. Because the outcome of that prosecution was important to the sentencing determination in this case, the district court did not violate Rule 32 by delaying sentencing."). In other words, a jury determined that Defendant committed perjury when he completed the CJA 23 Form. Even if Defendant is successful in challenging the convictions in the criminal proceeding for which he completed the CJA 23 Form, that will not alter the fact that Defendant is guilty of perjury. As a result, Defendant's arguments are purely speculative and cannot provide a basis to stay the sentencing proceedings in light of the language of Fed.R.Crim.P. 32(b)(1) mandating that the Court impose sentence without "unnecessary delay." [7]

7. Although not raised by Defendant, it is possible that if Defendant's child pornography convictions are set aside, his Criminal History Category for purposes of the Sentencing Guideline calculation in this case may be impacted. In the event that occurs, Defendant may attempt to pursue appropriate procedural redress at that time, but that possibility does not justify an indefinite delay of sentencing in this case. *See Doe*, 239 F.3d at 475 ("we agree with our sister Circuits and hold that defendants who successfully attack state convictions may seek review of federal sentences that were enhanced on account of such state convictions. It follows that Doe will suffer no significant prejudice from the district court's refusal to postpone his sentencing hearing while he attacks his earlier New York state conviction."); *Jeremiah v. United States*, No. Civ. 3575(SHS), 2007 WL 2915183, at *2 (S.D.N.Y. Oct. 3, 2007) ("Should Jeremiah ultimately prevail on that challenge and obtain the reversal of a prior conviction used by this Court to calculate his Criminal History Category under the U.S. Sentencing Guidelines, this Order shall not constitute a barrier to further review of petitioner's sentence pursuant to *Doe, Daniels*, and *Custis*."). *See also Daniels v. United States*, 532 U.S. 374, 382, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001) (If a "challenge to the underlying conviction is successful, the defendant may then apply for reopening of his federal sentence."); *Custis v. United States*, 511 U.S. 485, 497, 114 S.Ct.

Defendant has not demonstrated that he would suffer unfair prejudice if the Court continues with the sentencing proceeding. Defendant has had ample time to prepare for sentencing and the Court has already delayed sentencing to address Defendant's request for counsel. Accordingly, Defendant's request to stay sentencing in this case is denied.

### CONCLUSION

For the foregoing reasons, Defendant's request for appointment of counsel is denied and Defendant's request to adjourn sentencing is also denied.

SO ORDERED.

1732, 128 L.Ed.2d 517 (1994) ("If [defendant] is successful in attacking these state sentences, he may then apply for reopening of any federal sentence enhanced by the state sentences").